# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 02-2523

MARK MERRILL,

*Plaintiff-Appellant,*

*v.*

TRUMP INDIANA, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:99-CV-292—**Rudy Lozano**, *Judge.*

SUBMITTED FEBRUARY 11, 2003[1]—DECIDED FEBRUARY 26, 2003

Before EASTERBROOK, ROVNER, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* Mark Merrill robbed banks in December 1998 and January 1999 and for that activity he was convicted and is now serving time at a federal prison in Florida. But this is not a criminal case dealing with the robberies: it's a civil suit, under our diversity jurisdiction, alleging that a riverboat casino didn't do what it was supposed to do to prevent Merrill from gam-

---

[1] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

bling. His substantial gambling losses fueled a need for money, and although his complaint doesn't come right out and say it, Merrill's present predicament can be traced to his need for cash to cover his gambling tab.

Trump Indiana operates a riverboat casino on the shore of Lake Michigan in Gary, Indiana. We recently noted some of the political machinations that led to the licensing of the casino in the mid-1990's. *See Mays v. Trump Indiana, Inc.*, 255 F.3d 351 (7th Cir. 2001). Mr. Merrill, by his own admission, is a compulsive gambler. Like East and West, this is a twain that should never meet. But it did.

According to the third version of Merrill's complaint, which seeks over $6 million in damages, he entered a clinic for compulsive gamblers in Peoria, Illinois, in 1996. The clinic soon became his "guardian/custodian/trustee in all matters pertaining to the recognition and treatment of the symptoms and underlying causes of [his] addictive and compulsive behaviors . . . ." Acting in that capacity, Merrill alleged that his rehab counselor at the clinic contacted the casino in 1996 and formed with it an oral contract to keep Merrill off its premises. The consideration for this contract, it is alleged, was that the clinic would "publicize to the community" the casino's support of programs to help compulsive gamblers get over their addictions. Discovery in the case, particularly a deposition given by the rehab counselor, however, disclosed that no oral contract was created. But it is undisputed that Merrill himself, in 1996, wrote to the casino asking that he be evicted from it if he ever showed up to gamble. And Merrill's name does appear on the casino's "eviction list."

In 1998, Merrill relapsed and returned to gambling at the casino. And now, as we said, he's serving federal time for bank robbery.

Merrill's complaint alleged causes of action for fraud, constructive fraud, strict liability, breach of contract, intentional and reckless disregard for others' safety (willful and wanton misconduct), negligence, and breach of the implied covenant of good faith and fair dealing. The district court dismissed the constructive fraud and strict liability claims on a Rule 12(b)(6) motion and, a year later, granted summary judgment for Trump on all other counts. The court concluded that Trump never promised to honor Merrill's self-exclusion request and so no contract existed between Trump and Merrill. The court further found that, because Trump owed no statutory or contractual duty to Merrill, it did not act negligently or engage in willful and wanton misconduct.

On appeal, Merrill does not contest the district court's finding that he and Trump did not have a contract. He challenges only the grant of summary judgment on his tort claims. Merrill argues that the court erred in holding that Trump had neither violated a duty of care nor engaged in willful and wanton misconduct when it allowed Merrill to gamble in its casino. We review a grant of summary judgment *de novo*. *Trustees of the Aftra Health Fund v. Biondi*, 303 F.3d 765, 772–73 (7th Cir. 2002). In a case arising under our diversity jurisdiction, the substantive law of the forum state applies, *Land v. Yamaha Motor Corp.*, 272 F.3d 514, 516 (7th Cir. 2001), and that's Indiana here.

In Indiana, the existence of a tort duty is a question of law. *Benton v. City of Oakland*, 721 N.E.2d 224, 232 (Ind. 1999). Thus, we review *de novo* whether Trump owed a duty to Merrill. *Cooper v. Nelson & Co.*, 211 F.3d 1008, 1015 (7th Cir. 2000). We resolve the issues in this case as we believe Indiana courts would resolve them. *Trytko v. Hubbell, Inc.*, 28 F.3d 715,719 (7th Cir. 1994).

A defendant is not liable for negligence unless it owes a duty of care to an injured plaintiff. *Webb v. Jarvis*, 575

N.E.2d 992, 995 (Ind. 1991). Merrill argues that Indiana statutory provisions and administrative regulations impose a duty on Trump to exclude gamblers who ask to be placed on the casino's eviction list. The Indiana Gaming Commission is empowered by statute to eject or exclude individuals who "call into question the honesty and integrity of the gambling operations." Ind. Code § 4-33-4-7 (2002). But it is not clear that Merrill's conduct while in the casino put the "honesty and integrity" of Trump's operations in question. Moreover, the statute addresses exclusion by the gaming commission, not the casinos.

Indiana regulations do require casinos to maintain an eviction list, including individuals who request to be excluded, and to prohibit entry to those on the list: "Each riverboat licensee shall maintain a list of evicted persons . . . .  At minimum, the eviction criteria shall include . . . [a] person [who] requests that his or her own name be placed on the riverboat licensee's eviction list." Ind. Admin. Code tit. 68, r. 6-2-1 § 1(c)(5) (2002). But this is a recent amendment, implemented in 2000. In 1998, when Merrill's relapse occurred, no statute or regulation explicitly obligated Indiana casinos to honor self-eviction requests.

Even if the amended regulation applied, however, it is by no means certain that the regulation would sustain a cause of action against Trump. Trump is required by regulation to maintain an exclusion log and to add to that list individuals who request to be put on it. But Trump's obligation to follow regulations promulgated by the Indiana Gaming Commission does not automatically translate into a duty of care owed to compulsive gamblers. At most, the rules impose upon Trump a duty to the state through the gaming commission, not to a self-requesting evictee.

If Trump violates regulations, it must answer to the gaming commission—the current rules provide for admin-

istrative and disciplinary hearings, as well as sanctions against casinos, including fines and rescindment of licenses. Ind. Admin. Code tit. 68, r. 13-1-1 *et seq*. But neither the regulations nor the statute expressly creates a private cause of action against nonconforming casinos. When a statute is silent regarding the imposition of civil liability, the Indiana Supreme Court looks to legislative intent to determine whether a private cause of action exists. *Vaughn v. Daniels Co.*, 777 N.E.2d 1110, 1134 (Ind. 2002). As the district court noted, the statutory provisions and administrative rules surrounding gambling are voluminous, and although the legislature was silent regarding civil liability, it specifically created administrative penalties to be enforced through the gaming commission. Given the extent of gambling regulation in Indiana, we conclude that the Indiana Supreme Court would not conclude that the legislature intended to create a private cause of action. *See Hakimoglu v. Trump Taj Mahal*, 70 F.3d 291, 293-94 (3d Cir. 1995) (where state intensely regulated casinos without creating cause of action, casino was not liable to plaintiff who suffered extensive gambling losses while intoxicated).

But Merrill also argues that, even in the absence of a statutory duty, Trump owed him a duty of care under common law. We can find no Indiana case addressing the extent of the duty owed by casinos to their patrons. Indeed, it appears that no court has addressed the specific issue whether casinos can be sued in tort when they fail to evict a gambler who requests his own exclusion.

Courts elsewhere that have addressed the liability of casinos to injured plaintiffs have imposed on casinos no higher duty to their patrons than any on other business. *Lundy v. Adamar of N.J., Inc.*, 34 F.3d 1173, 1180-81 (3d Cir. 1994) (casino had duty to summon aid and take reasonable first aid measures); *Marmer v. Queen of New Orleans at the Hilton, J.V.*, 787 So.2d 1115, 1120 (La. Ct.

App. 2001) (casino has duty to protect patrons from foreseeable criminal acts); *Saucier v. Players Lake Charles*, 751 So.2d 312, 319 (La. Ct. App. 1999) (casino has duty to take reasonable care of patrons' safety); *Joynt v. Cal. Hotel & Casino*, 835 P.2d 799, 801 (Nev. 1992) (casino has duty to maintain reasonably safe premises). Under Indiana law, a business owes its invitees a duty to take reasonable care for their safety. *Ellis v. Luxbury Hotels, Inc.*, 716 N.E.2d 359, 360 (Ind. 1999). Merrill never alleged in district court that Trump had not taken reasonable care for his safety or that he ever felt unsafe on the premises.

The closest analogy to Merrill's situation is that of a tavern's liability to exercise reasonable care to protect its patrons. In Indiana, a tavern proprietor serving alcohol can be held liable, under certain conditions, if an intoxicated patron injures another patron or a third party. *E.g.*, *Paragon Family Restaurant v. Bartolini*, 769 N.E.2d 609, 614 (Ind. Ct. App. 2002); *Fast Eddie's v. Hall*, 688 N.E.2d 1270, 1272 (Ind. Ct. App. 1997). But a patron who drives while intoxicated, causing his own injuries, cannot recover from the tavern that served him alcohol. *Davis v. Stinson*, 508 N.E.2d 65, 68 (Ind. App. 1987). Essentially, Merrill thinks that the casino should be held responsible for the destructive effects of his 1998 relapse into gambling. But Indiana law does not protect a drunk driver from the effects of his own conduct, and we assume that the Indiana Supreme Court would take a similar approach with compulsive gamblers.

Merrill's last argument is that the court erred in granting Trump summary judgment on his willful and wanton misconduct claim. In Indiana, a defendant engages in willful and wanton misconduct when it consciously acts or refuses to act knowing, or with reckless disregard to the probability, that injury will result to the plaintiff from its conduct or from its failure to take steps to avoid

an impending danger. *Withan v. Norfolk and W. Ry. Co.*, 561 N.E.2d 484, 486 (Ind. 1990); *Conder v. Hull Lift Truck, Inc.*, 435 N.E.2d 10, 21 (Ind. 1982). The defendant must know that injury is probable or likely, as opposed to possible. *Conder*, 435 N.E.2d at 21. Under this standard, we cannot conclude that the district court erred in concluding that Merrill raised no issue of material fact that could lead a jury to find that Trump engaged in willful and wanton misconduct. For these reasons, the judgment of the district court is AFFIRMED.

A true Copy:

      Teste:

                          _____

                          *Clerk of the United States Court of Appeals for the Seventh Circuit*