David M. WILLIAMS, Plaintiff–Appellant,

v.

**AZTAR INDIANA GAMING CORPORATION f/d/b/a Casino Aztar, and Aztar Indiana Gaming Company, LLC d/b/a Casino Aztar, Defendants–Appellees.**

No. 03–1822.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 22, 2003.

Decided Dec. 5, 2003.

Terry Noffsinger (argued), Noffsinger & Barnett, Evansville, IN, for Plaintiff–Appellant.

Patrick A. Shoulders (argued), Ziemer, Stayman, Weitzel & Shoulders, Evansville, IN, for Defendants–Appellees.

Before FLAUM, Chief Judge, and EASTERBROOK and WILLIAMS, Circuit Judges.

WILLIAMS, Circuit Judge.

David M. Williams is a compulsive gambler who gambled away his life savings at Casino Aztar. He sued defendants in federal court, alleging violations of the Racketeer Influenced and Corrupt Organizations (RICO) statute and other state law claims. The district court granted summary judgment to defendants on all of his claims and Williams appeals one aspect of the ruling. Because we find his RICO claim to be frivolous and alleged solely to invoke the jurisdiction of the federal courts, we vacate the district court's judgment and dismiss his lawsuit for want of subject-matter jurisdiction.

## I. BACKGROUND

David Williams is a college graduate and former auditor with the Indiana Department of Revenue. In 1996, he began gambling at Casino Aztar, a riverboat casino on the Ohio River in Evansville, Indiana. When his gambling habits appeared excessive, Darlene Tempel, his girlfriend and former roommate, contacted various entities on his behalf, including the Governor's office, state and local police officials, and a mental health facility. In April or May 1997, Tempel also called Aztar's Human Relations Department to express her concerns but was informed that Aztar could not act on the request of an unrelated third party.[1] Aztar suggested that Tempel encourage Williams's parents to intervene, but Williams apparently dissuaded her from contacting them.

In March 1998, as Williams's gambling spun further out of control, Tempel again contacted Aztar and informed the casino that Williams had compulsively gambled himself into financial debt and depression and that he was contemplating suicide. In response to her pleadings, two members of Aztar's Responsible Gaming Committee approached Williams in the casino to discuss his gambling habits. Later that night, Williams checked into a local mental health facility, where he was subsequently committed by court order in light of suicide letters he had written. Later that month, Aztar sent Williams a "Cease Admissions" letter stating:

> [W]e must insist that prior to gaming with us, at any time in the future, you must present us with medical/psychological information which demonstrates that your patronage of our facility poses no

---

1. The chairperson of Aztar's Responsible Gaming Committee provided deposition testimony that Aztar actually could investigate a patron's gambling activities in response to a third-party complaint.

threat to your safety and/or well-being.... As we are sure you understand, Casino Aztar must reserve the right to cease doing business with any customer when to do so is in the best interest of not only Casino Aztar, but the customer as well.

Between Tempel's first communication to Aztar and the casino's mailing of the "Cease Admissions" letter, Williams gambled away approximately $160,000.

Although he received outpatient treatment for his gambling addiction and was able to avoid gambling for nearly a year, Williams ultimately gave in to his addiction and returned to gamble at Aztar in early 1999. When he initially returned to the casino, Williams failed to bring his "Fun Card," an Aztar-provided card that identifies the holder and tracks that person's betting history on the machines and in the casino's computer system. Nevertheless, without identifying himself, submitting a request for reinstatement, or presenting Aztar with medical documentation as requested in the "Cease Admissions" letter, Williams was admitted to the casino without confrontation or impediment and permitted to gamble.[2] After four or five visits, Williams started using his "Fun Card" again, and as a result began receiving a variety of promotional mailings from Aztar. It was not until August 2000 that Williams was informed by an Aztar security guard that he was again barred from the premises. By this time, Williams had gambled away an additional $15,000 to $20,000.

Williams sued Aztar's former and current operators, claiming a civil violation of the federal RICO statute, codified at 18 U.S.C. § 1961 *et seq.,* resulting from an alleged pattern of racketeering activity in the form of mail fraud. He also brought various state law claims including state racketeering activity, tortious breaches of duty, premises liability, intentional infliction of emotional distress, breach of constructive or implied contract, fraudulent misrepresentation, and breach of contract, and sought punitive damages. The district court dismissed Williams's initial RICO claim without prejudice, finding that it failed to allege sufficient facts to substantiate the predicate act of mail fraud. After Williams filed a Second and then Third Amended Complaint, which reasserted RICO claims, defendants answered and moved for summary judgment on all claims. The district court again dismissed Williams's RICO claim, finding that he failed to allege acts that give rise to mail fraud, but exercised supplemental jurisdiction over his remaining state law claims and granted defendants summary judgment on all remaining counts.

Williams appeals the grant of summary judgment on his tortious breach of the duty of care claim, asking this court to either ignore our earlier decision in *Merrill v. Trump Indiana, Inc.,* 320 F.3d 729 (7th Cir.2003), in which we held that Indiana law does not impose a duty of care on casino operators to protect gambling addicts from their own addictive and injurious behavior, or to certify the question to the Indiana Supreme Court notwithstanding our explicit rejection of a similar request in *Merrill.* Williams does not appeal the dismissal of the RICO claim that

---

**2.** In accordance with Indiana state law, *see* IND. ADMIN. CODE tit. 68, r. 6–2–1 § 1(c)(5). Aztar maintained and enforced a "self-ejection" program by which a person may request that his name be added to the casino's eviction list. Williams was aware of this list but did not seek to avail himself of its protections; and while the record indicates that Aztar's computer system recorded Williams as "self-ejected," Williams admitted that he never personally requested that Aztar bar him and/or eject him from the casino.

was his sole basis for invoking federal jurisdiction.

## II. ANALYSIS

██ David Williams is a resident of Indiana and defendants have at all times been organized and existing under the laws of Indiana with their principal places of business in Indiana. Because the parties are not of diverse citizenship, *see* 28 U.S.C. § 1332, Williams must allege a claim under the Constitution or federal statutes to invoke the jurisdiction of the federal courts. *Id.* § 1331; *Oak Park Trust & Sav. Bank v. Therkildsen*, 209 F.3d 648, 651 (7th Cir.2000). "It is standard learning that federal question jurisdiction arises only when the complaint standing alone 'establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Minor v. Prudential Secs., Inc.*, 94 F.3d 1103, 1105 (7th Cir.1996) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27–28, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)) (other citations omitted).

██ To invoke federal question jurisdiction, Williams alleged a violation of the federal RICO statute by virtue of mail fraud under 18 U.S.C. § 1341. *See* 18 U.S.C. § 1961(1)(B).[3] The viability of Williams's RICO claim turns on whether he has established a pattern of racketeering activity, which is an essential element of a claim under the RICO statute. *Vicom, Inc. v. Harbridge Merchant Serv.,*

*Inc.*, 20 F.3d 771, 778–79 (7th Cir.1994). The RICO statute does not define the pattern requirement, but provides that a pattern requires at least two acts of racketeering activity within a ten-year period, 18 U.S.C. § 1961(5), and "racketeering activity" is defined to include any act indictable under specified provisions of the United States Code, including mail fraud under 18 U.S.C. § 1341. *See id.* § 1961(1)(B); *McDonald v. Schencker*, 18 F.3d 491, 494 (7th Cir.1994). The Supreme Court has indicated that, "in addition to at least two predicate acts, a RICO plaintiff must show 'that the racketeering predicates are related, and that they amount to or pose a threat of *continued* criminal activity.'" *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 142 F.3d 1041 (7th Cir.1998) (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 237, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989)) (emphasis in original). Therefore, a RICO plaintiff like Williams alleging racketeering activity in the form of mail fraud must show "continuity plus relationship with respect to the alleged predicate[ ]" acts of mail fraud. *Id.* (citing *H.J. Inc.*, 492 U.S. at 239, 109 S.Ct. 2893; *Sedima*, 473 U.S. at 496 n. 14, 105 S.Ct. 3275).

██ Even if we assume that the mailings on which Williams bases his RICO claim meet the relationship and continuity prongs required of predicate acts,[4] Williams must still explain how these mailings constitute the predicate act of mail fraud, and thus "racketeering activity." *See Emery v. Am. Gen. Fin. Inc.*, 71 F.3d 1343 (7th Cir.1995); *Spitz*, 976 F.2d at 1022. The elements of mail fraud under

---

**3.** Though designed as a criminal law, *see Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 498, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the RICO statute provides that individuals injured by RICO violations may bring civil suits under the statute, *see* 18 U.S.C. § 1964(c).

**4.** The district court did not think continuity had been satisfied due to the relatively short time span (ten to twelve months) covered by the mailings. *See Vicom*, 20 F.3d at 780 (nine months does not satisfy closed-ended continuity requirement); *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1024 (7th Cir.1992) (same).

18 U.S.C. § 1341 are: "(1) the defendant's participation in a scheme to defraud; (2) defendant's commission of the act with intent to defraud; and (3) use of the mails in furtherance of the fraudulent scheme." *United States v. Walker*, 9 F.3d 1245, 1249 (7th Cir.1993); *see also McDonald*, 18 F.3d at 494. A necessary element of a scheme to defraud is the making of a false statement or material misrepresentation, or the concealment of a material fact, *see Neder v. United States*, 527 U.S. 1, 25, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), *United States v. Tadros*, 310 F.3d 999, 1006 (7th Cir.2002), and it is here that Williams's complaint fails.

Williams alleges that the language in Aztar's communications to him—i.e., both the "Cease Admissions" letter and the promotional mailings—were intentional misrepresentations designed to defraud Williams of his money or property. The "Cease Admissions" letter, however, in no way constitutes a misrepresentation, much less one on which Williams could rely, as it merely insists that, prior to his continued patronage, Williams provide the Casino with proof that his continued patronage will not be a threat to his safety or well-being. It does not, as Williams contends, state that Williams would be prevented from entering or gambling at the Casino absent such communication on his part,

but merely indicates that Aztar reserves the right to cease doing business with a customer if it believes such a decision is in the casino's or customer's best interest. As for the promotional mailings, even if the statements in these communications could be considered "false" or "misrepresentations,"[5] it is clear that they are nothing more than sales puffery on which no person of ordinary prudence and comprehension would rely. *See Assocs. in Adolescent Psychiatry, S.C. v. Home Life Ins. Co.*, 941 F.2d 561, 570 (7th Cir.1991); *Reynolds v. East Dyer Dev. Co.*, 882 F.2d 1249, 1252 (7th Cir.1989). Accordingly, the district court properly dismissed Williams's RICO claim.

■ While in many circumstances Williams's "failure to prove his contentions [would] not deprive a court of jurisdiction," it appears to us that his RICO theory "is *so* feeble, so transparent an attempt to move a state-law dispute to federal court ... that it does not arise under federal law at all." *Therkildsen*, 209 F.3d at 651 (emphasis in original); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); *Oneida Indian Nation of N.Y. v. County of Oneida*, 414 U.S. 661, 666, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974); *Buntrock v. Sec. & Exch. Comm'n*, 347 F.3d 995, 997 (7th

---

**5.** These promotional mailings made the following pronouncements: "Players Win!": "Casino Aztar gives you more cash, just in time for the holidays"; "[f]ree money, just when you need it most from your friends at Casino Aztar!"; "[a]s always, our top priority is simply this: to ensure your complete, 100% satisfaction"; "no one gives you more in December than Casino Aztar!"; and "the winning is big!" Williams also received mailings that stated he was one of Aztar's "very best players," "most loyal guest[s]," "one of a select few elite players." The mailings also stated that "as a premium player, [he] deserve[d] the best possible service," "[e]very month we're adding new hot slots ... [c]ome

get your share!"; and one said that "new machines are arriving all the time so you'll have even more chances to win. And check out the Hot Slots 100 posted in the Fun Center to find out where the big payouts are."

Williams was able to get a casino representative to admit that not all players win and some players also lose. Williams also was able to get Aztar representatives to admit that it was not literally true that Williams was the casino's "most loyal guest." As for the odds of successful gambling, the district court noted that past payouts on machines are not an indication of future success, and an increased number of machines does not improve a person's odds of winning.

**300**

Cir.2003). At oral argument, Williams's counsel all but conceded that he lacked a good faith basis for bringing the RICO claim (he specifically noted that Williams was not appealing the district court's resolution of that issue). When confronted by the apparent inadequacy of the claim, Williams's counsel could not point to one RICO case on which he relied before filing this lawsuit (much less an analogous case). Instead, he stated that "gambling is new in our country," and simply reiterated the facts pled in his complaint to substantiate how this is a "new" or "novel" invocation of RICO. We are unpersuaded by his rhetoric and do not find this to be a "nonfrivolous argument for the extension [or] modification ... of existing law or the establishment of new law." Fed.R.Civ.P. 11(b)(2). Rather, we find this case to be exactly the type of bootstrapping use of RICO that federal courts abhor. See Emery, 71 F.3d at 1352 (Coffey, J., dissenting) ("[D]istrict judges ... are trying desperately to manage their dockets in the face of mounting civil litigation, and [lawsuits like this] will only encourage further lawsuits based on novel and expansive readings of the mail fraud statute and of RICO....").

■ The supplemental jurisdiction statute provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). With the dismissal of Williams's RICO claim, the sole basis for invoking federal jurisdiction is nonexistent and the federal courts should not exercise supplemental jurisdiction over his remaining state law claims. See, e.g., Wright v. Associated Ins. Cos. Inc., 29 F.3d 1244, 1251 (7th Cir.1994)

("[T]he general rule is that once all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolv[e] them on the merits.") (citing United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). To hold otherwise would suggest to every nondiverse plaintiff that he or she may invoke federal jurisdiction simply by alleging a baseless RICO claim, which would have the effect of denying or diminishing access to the federal courts by other litigants legitimately invoking federal jurisdiction. See Pratt Cent. Park Ltd. P'ship v. Dames & Moore, 60 F.3d 350, 352 (7th Cir.1995); see also Emery, 71 F.3d at 1352 (Coffey, J., dissenting).

### III. CONCLUSION

■ For the foregoing reasons, the judgment of the district court is VACATED and the case is REMANDED to the district court with instructions to dismiss the complaint for want of subject-matter jurisdiction. Because this court concludes that Williams's RICO claim was frivolously filed solely to invoke the jurisdiction of the federal courts, we declare this appeal is also frivolous, and we direct plaintiff to show cause within 14 days why he should not be sanctioned under our Rule 38.