# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 04-3261

ROBIN JOHAL,

                                    *Plaintiff-Appellant,*

v.

LITTLE LADY FOODS, INC.,

                                    *Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 8481—**Ronald A. Guzman**, *Judge.*

_____

ARGUED SEPTEMBER 12, 2005—DECIDED JANUARY 17, 2006

_____

Before COFFEY, EASTERBROOK, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* Robin Johal, who was born Rabinder Sandhu in India in 1952, emigrated to the United States when she was a teenager. By all accounts, she did quite well once she got here, graduating with a B.S. degree in food science and technology from the University of Washington in 1977. She and her husband, Paul Johal, have three children, and the oldest is a student at the University of Chicago's medical school. But to this nice story, a little unpleasantness in the workplace—at least she

thinks so—has emerged. And that unpleasantness gives rise to this case.

Robin Johal was employed in several positions by Little Lady Foods, Inc., (LLF) from 1992 until she was discharged in 2001. She was originally hired as manager of quality assurance but also fulfilled the responsibilities of the company's lead research and development position during several periods when that position was vacant. After a reorganization in 2000, Johal was offered her choice of managing either the quality assurance department or the research and development department. She chose the R&D job.

That same year, LLF began a period of rapid growth and change due primarily to the acquisition of a major new client, H.J. Heinz. Up until that time, the company was fairly small, generally making pizza crusts and pizzas for its own brand, Bravissimo. Now, with a bigger fish to fry, LLF started receiving complaints from Heinz about Johal's performance. As they continued to grapple with the challenges of meeting the more sophisticated requirements of the Heinz account as well as some related problems with the U.S. Department of Agriculture, LLF's top executives considered further reorganization. In April 2001, the company hired a new director of technical services, and Johal was told she would report to this new director. The company also determined that it needed to hire a corporate chef with formal culinary training. During this period, company president John Geocaris received complaints about Johal from her new supervisor as well as from other employees.

In July 2001, LLF decided to eliminate Johal's position as manager of research and development and to distribute the responsibilities of that position among the corporate chef, the director of technical services, and the lead research and development technician. That same month, Geocaris

discharged Johal based on her job performance and the elimination of her position.

In the district court, Johal alleged discrimination on the basis of race, color, national origin, and sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* and discrimination on the basis of age in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* In a thorough, 36-page opinion, the district court (Judge Ronald A. Guzman) found no genuine issues of material fact and granted the defendant's motion for summary judgment on all counts. Johal appeals, and our review, as usual, is *de novo. Merrill v. Trump Indiana, Inc.,* 320 F.3d 729, 731 (7th Cir. 2003).

In her appeal, Johal gives up her allegations of age and sex discrimination. Describing herself as "an American of Asian descent," she now limits her claims to discrimination based on race, color, and national origin (though sometimes seeming to conflate two or more of these protected classes). From a rather discursive brief, we discern two primary arguments under the "indirect" burden-shifting test for discrimination explained in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973), as that test was modified by the mini-reduction-in-force situation we recognized in *Michas v. Health Cost Controls of Illinois, Inc.,* 209 F.3d 687, 693 (7th Cir. 2000). Under this approach, a plaintiff must establish a *prima facie* case of discrimination by showing that (1) she is a member of a protected class, (2) she was performing her job satisfactorily, (3) she suffered a materially adverse employment action, and (4) her job duties were absorbed by employees who were not members of her protected class. The burden of production then shifts to the defendant to show legitimate, nondiscriminatory reasons for its actions. Finally, the burden shifts back to the plaintiff to attempt to show that the defendant's stated reasons are pretextual.

First, Johal argues in various ways that her job performance was satisfactory. She cites a "discretionary bonus" of $3,500 she was given at the time of her discharge. However, she provides no evidence about the basis for the bonus or how it was supposedly tied to her performance. We cannot endorse Johal's belief that "[w]hen an employer pays a discretionary bonus to an employee at the time of firing that employee, the logical inference is that the employee was meeting the legitimate expectations of the employer at the time of the firing." Since it was offered in the context of an exit meeting with the company president, the bonus looks as much like a form of severance pay as it does a reward purportedly tied to job accomplishments.

Johal reiterates arguments she made below that a written performance review she received 6 months before her discharge was "positive" in its "overall tenor." But as Judge Guzman correctly observed, "[w]hat matters in a discriminatory discharge case is not the employee's past performance, but whether she was meeting the company's expectations at the time of her discharge." *See Cengr v. Fusibond Piping Sys., Inc.,* 135 F.3d 445, 452-53 (7th Cir. 1998); *Karazanos v. Navistar Int'l Transp. Corp.,* 948 F.2d 332, 336 (7th Cir. 1991). Moreover, both Johal's duties and supervision changed within the 6 months between her review and her discharge.

Second, Johal argues that one of the nondiscriminatory reasons LLF cited for discharging her—that it had eliminated her position—was pretextual. Specifically, she contends that a genuine issue of material fact exists about whether LLF eliminated her former position as R&D manager. But the record does not support an inference of pretext. It shows that the company's business demands were growing and changing and that Johal's former responsibilities were distributed among three other positions as part of an overall restructuring of job functions and reporting lines. Moreover, it is not our role to question the wisdom

of a company's decisions on how to run its business, only to assure that such decisions are not intended to provide cover for illegal discrimination. *Kariotis v. Navistar Int'l Transp. Corp.,* 131 F.3d 672, 676 (7th Cir. 1997). We find no basis for Johal's claim that the elimination of her position was pretext for a discriminatory discharge.

Johal also presents a collection of arguments under the "direct" test for employment discrimination, under which she must present circumstantial evidence that permits an inference of discriminatory behavior by the employer. *See Troupe v. May Dep't Stores Co.,* 20 F.3d 734, 736 (7th Cir. 1994).

First, she contends that the director of technical services who was hired in April 2001, Paula Gerlat, should actually be seen as her replacement. But Gerlat was hired in part to supervise Johal, and since Johal never elicited record evidence of Gerlat's race, color, or national origin, we fail to see how Gerlat's hiring provides circumstantial evidence of discrimination.

Second, Johal discusses the racial composition of LLF's management ranks and urges us to infer from these "statistics" that the company's upper management is closed to members of minority groups. But her brief does not rectify the flaw that was fatal on this point in the district court: the failure to provide any information about the relative qualifications of the various upper managers who were retained, hired, or demoted.

Third, Johal says that no non-Caucasian has ever reported directly to company president Geocaris. Leaving aside the fact that, as a person born in India, Johal is legally classified as a Caucasian, such conjecture without more does not amount to circumstantial evidence of discrimination.

Fourth, Johal discerns circumstantial evidence of discrimination in the way LLF distributed its stock appreciation

rights. But she does not address the district court's finding that her evidence on this point was incomplete and included no comparison of the qualifications or duties of the employees who received the awards. Even acknowledging that on summary judgment a court must draw reasonable inferences in favor of the nonmoving party, Johal does not provide enough substance to support her claim that the company's plan "discriminated against Johal in particular and non-Caucasians in general based upon race, color, or national origin."

Last, Johal points to what she says are inconsistencies between Geocaris's testimony in this case and various corporate documents. But none of these "inconsistencies," if they can be so labeled, shed any real light on the key issue of discriminatory intent.

In the process of considering summary judgment, the district court struck a number of paragraphs from Johal's statement of facts due to her failure to comply with the requirements of Local Rule 56.1. On appeal, Johal attempts to revive these building blocks of her case by claiming that the district court considered facts beyond those in the parties' summary judgment papers and thus should have considered "all available materials" rather than strictly enforcing Rule 56.1. She also urges that Title VII plaintiffs be cut some slack because "[i]t is not a burden on the district court . . . to consider facts cited in a memorandum [of law] with appropriate references," even if those facts should have come in through a Local Rule 56.1 statement. Even assuming that admitting all Johal's facts would strengthen her legal case and create at least one genuine issue of material fact—a proposition we seriously doubt—we find no error in how the district judge handled the facts and materials before him.

Thus, we conclude that Johal has fallen short of showing that the workplace unpleasantness about which she

complains was due to her "race, color, or national origin." Accordingly, the judgment of the district court is AFFIRMED.

A true Copy:

Teste:

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*