NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 14, 2007
Decided July 11, 2008

**Before**

RICHARD A. POSNER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 06-4115

| | |
|---|---|
| YELENA SPECTOR,<br>  *Plaintiff-Appellant,*<br><br>  *v.*<br><br>U.S. BANK NATIONAL<br>ASSOCIATION,<br>  *Defendant-Appellee.* | Appeal from the United States District<br>Court for the Northern District of<br>Illinois, Eastern Division<br><br>No. 05 C 5339<br><br>Elaine E. Bucklo,<br>*Judge.* |

**O R D E R**

U.S. Bank fired Yelena Spector in October 2004 for failing to maintain an acceptable level of productivity. Spector sued the Bank under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging discrimination on the basis of her pregnancy. She also claimed unlawful retaliation under the Family Medical Leave Act (FMLA), 29 U.S.C. § 2101 *et seq.* The district court granted summary judgment for U.S.

Bank, and Spector now appeals. Because Spector has not shown a genuine dispute of material fact with respect to either unequal treatment or retaliation, we affirm the district court's decision.


# I


In June 2002, U.S. Bank hired Spector to work in its Riverwoods Branch as a Sales and Service Manager. Her duties included assisting the Branch Manager, performing teller duties, and soliciting loan applications. Spector's annual performance appraisals for 2002 and 2003 were both positive. On March 30, 2004, however, Spector received from Elizabeth Eckert, her Branch Manager, a document entitled "Written Warning." The warning required her to "bring in two loan applications per week" and stated that if she failed to do so, she would "be terminated one month from today on April 30, 2004." U.S. Bank imposed this requirement on Spector before she learned that she was pregnant. Immediately after she found out that she was pregnant, in late April 2004, she informed the bank of that fact.

Between March 30 and April 30, 2004, the period referred to in the warning, Spector submitted only two loan applications. At some point within that time, Spector told Denise Zajac-Podhajsky, Vice President of Retail Banking for U.S. Bank, that she understood "the Bank's expectations" and had ideas "on how to get more loans." Despite her professed understanding, over the next three months Spector submitted only five loan applications, once again well short of the requirement of two loans per week. U.S. Bank did not, however, terminate her.

In August 2004, Haris Qidwai replaced Eckert as Branch Manager. Upon learning that Spector had not been meeting her loan application goals, Qidwai contacted Zajac-Podhajsky to determine a proper course of action. Zajac-Podhajsky told Qidwai that Spector's performance over the last year had been "sub par" and advised him to create a thirty-day action plan. Qidwai presented that action plan to Spector on September 13. It set several minimum requirements, including the weekly generation of two loan applications, ten calls to potential customers, ten calls to solicit investments, and "consumer/business deposit accounts per week" [*sic*] (presumably setting a minimum number of new accounts or deposits she had to generate). Noting that the bank had already advised Spector that her performance had been "far below expectations," it warned her that failure to meet these requirements might result in termination.

Exceeding the loan application requirement just briefly, Spector submitted seven loan applications during the first two weeks of the action plan. But she submitted no new applications at all for the remainder of the thirty days. During this period, Spector also requested vacation time for the last two weeks of December before her intended maternity leave in January 2005. Qidwai denied her request because the Riverwoods Branch did not have adequate staffing to cover for her absence.

By October 19, with her average weekly generation of loan applications below two, Qidwai concluded that Spector had not met the action plan's requirements and terminated her employment. That same day Qidwai had a co-worker of Spector sign a form stating that she had seen Spector leave a cash drawer unlocked and unattended. Qidwai allegedly told the co-worker that he needed her signature to "cover [Spector's] firing." The co-worker, however, had not witnessed Spector's leaving the drawer unattended. This incident occurred after Qidwai made the decision to fire Spector for poor performance.

Spector then brought this lawsuit against U.S. Bank alleging unlawful termination. In response to the bank's motion for summary judgment, Spector argued that she had established a *prima facie* case of discrimination under the indirect, burden-shifting approach by showing that: (1) she was pregnant and the bank knew of her pregnancy; (2) she met the bank's legitimate expectations by fulfilling the action plan; (3) the bank terminated her; and (4) the bank replaced her with a non-pregnant female. Spector also contended that she raised an inference of discrimination because the bank made no real effort to determine whether she had met the action plan's requirements. Finally, Spector argued that the notice she provided when she requested vacation time satisfies the FMLA's requirements and that the timing of her termination—within two weeks of her request—gave rise to an inference of retaliation.

The district court, finding that Spector could not show that she was meeting the bank's legitimate expectations or that her replacement was a similarly situated employee, held that she could not make out a *prima facie* case of sex discrimination. The court also concluded that the timing between Spector's request for vacation time and her termination could not support an inference of retaliatory discharge. It therefore granted summary judgment to U.S. Bank.

## II

We review a grant of summary judgment de novo, construing the facts and inferences in Spector's favor. *Hague v. Thompson Distrib. Co.*, 436 F.3d 816, 820 (7th Cir. 2006). Spector renews her argument that she satisfied her *prima facie* case as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), and that she submitted sufficient evidence of pretext. She also challenges the district court's ruling that the bank did not terminate her in retaliation for requesting leave under the FMLA.

Both the district court and the parties' briefs analyze whether Spector made a *prima facie* case of sex discrimination. Often, however, when an employer offers a legitimate, nondiscriminatory reason for firing an employee, it is just as easy to evaluate the case as a whole to see if the plaintiff has presented enough to survive summary judgment. See *Brewer v. Bd. of Tr. of the Univ. of Ill.*, 479 F.3d 908, 915-16 (7th Cir. 2007) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993)). The inquiry turns to whether the plaintiff has created a genuine issue of fact about the sincerity of that explanation and therefore whether the defendant discriminated against her. See *Hicks*, 509 U.S. at 511; *Hague*, 436 F.3d at 823. Here, U.S. Bank has offered a legitimate, nondiscriminatory explanation for terminating Spector: it says that she failed to meet the requirements laid out in the action plan. Rather than worry about whether this tends to undermine the "meeting expectations" part of the *prima facie* case or to support the employer's response, we prefer to address these two questions together. See *Fortier v. Ameritech Mobile Commc'ns, Inc.*, 161 F.3d 1106, 1113 (7th Cir. 1998)

Spector argues that she met U.S. Bank's legitimate expectations by fulfilling the action plan. She cites the two positive performance reviews she received prior to 2004. But we repeatedly have held that an employee must be meeting her employer's expectations at the time of discharge. See, *e.g., Johal v. Little Lady Foods, Inc.*, 434 F.3d 943, 946 (7th Cir. 2006). Spector's evidence does not address the key question. Spector also asserts that she met the action plan's production levels. But the loan applications in the record, which Spector does not claim are incomplete, conclusively establish that she did not bring in two loans per week. Spector submitted only ten loan applications between March 30 and September 13, an average of less than 0.5 per week. And although she submitted seven loan applications between September 13 and September 27, she submitted no loan applications between September 27 and her discharge on October 19. Thus, the weekly average in the five weeks between the start of the action plan on September 13 and her discharge on October 19 still fell short of the bank's minimum requirements. In light of the undisputed documentation of her deficient production of

loan applications, Spector's self-assessment of her performance is insufficient to create an issue of fact. See *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 740 (7th Cir. 2006).

Spector has not only failed to raise a genuine factual issue about her inability to meet the bank's action plan, but she has also not rebutted the bank's explanation for her discharge as pretextual. An employer's explanation for a termination is pretextual if it is "not the true ground" for its decision. *Griffin v. Sisters of Saint Francis, Inc.*, 489 F.3d 838, 845 (7th Cir. 2007). The focus of the inquiry is whether the employer's stated reason for the termination was honest. See *Hague*, 436 F.3d at 823. Spector contends that the time it took for U.S. Bank to produce its loan-application records during this litigation and the incident involving the unattended cash drawer on October 19 raise an inference that her performance was not the true ground for her discharge. It is too much of a strain, however, to draw that inference from the facts she mentions. The pace of discovery during litigation has no bearing on the honesty of Qidwai's reasons for terminating Spector because there is no evidence that he was involved in the discovery production. And the cash-drawer incident suggests only that Qidwai believed that he had a second reason to fire Spector; it is not evidence that Qidwai did not believe his first reason—that Spector had failed to perform adequately.

Spector also challenges the district court's ruling on the question whether U.S. Bank treated her worse than others who were like her in all relevant respects except for her protected characteristic. At most, however, success on that point would only help her establish a *prima facie* case. Since we have already held that she cannot show that U.S. Bank's reason for firing her was pretextual, this dispute is immaterial.

Spector's FMLA claim fares no better. She argues that the temporal proximity between her request for vacation time and her termination is sufficient to support her claim for retaliatory discharge. For a *prima facie* case in an FMLA retaliation claim without direct evidence of retaliatory discharge, a plaintiff must produce evidence that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse action subsequent to the activity; and (3) there was a causal link between the protected activity and adverse action. *Lewis v. Holsum of Fort Wayne, Inc.*, 278 F.3d 706, 710-11 (7th Cir. 2002). Temporal proximity alone is generally insufficient, and is insufficient here, to create an issue of material fact on the issue of causation. See *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 506-07 (7th Cir. 2004); *Lewis*, 278 F.3d at 711. Furthermore, once again Spector has not rebutted U.S. Bank's legitimate, non-discriminatory reason for its decision to fire Spector. Thus, even if she could establish a *prima facie* case of retaliatory discharge, Spector's FMLA claim could not go forward. See *Lewis*, 278 F.3d at 711.

Accordingly, we AFFIRM the judgment of the district court.