**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 29, 2020
Decided February 13, 2020

**Before**

WILLIAM J. BAUER, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 19-1811

| | |
|---|---|
| MAMAN BIO,<br>     *Plaintiff-Appellant*, | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. |
| *v.* | |
| | No. 1:16-cv-02546-TWP-MJD |
| INVENTIV HEALTH CLINICAL, LLC,<br>     *Defendant-Appellee*. | Tanya Walton Pratt,<br>*Judge*. |

**O R D E R**

Maman Bio managed a team of statistical programmers for inVentiv Health Clinical, LLC. He was fired and his team dissolved after one of the company's clients began insourcing—that is, performing itself—the programming work of Bio and his team. In response Bio, who is black and from Niger, sued inVentiv for race and nationality discrimination under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. The district court granted summary judgment to inVentiv, concluding it had a non-pretextual reason for firing Bio that he failed to rebut. We affirm.

Bio began working for inVentiv Health Clinical in 2010 as a senior statistical programmer for projects originating from inVentiv's client, Eli Lilly & Company. He was promoted to manager of statistical programming for Lilly matters two and a half years later. During his tenure as manager of statistical programming, Bio supervised between 10 and 14 programmers.

In early 2014, inVentiv learned Lilly would perform itself the statistical-programming work inVentiv was conducting for Lilly's oncology studies. Bio's team had performed this work up to that time. When asked at his deposition what effect this change had on his team, Bio responded, "There was no work. So the people who were working there basically had to go work on other project[s]."

Despite assurances to the contrary, Lilly began to insource other projects as well, with the result that the remaining statistical-programming work Bio's team had been performing for Lilly dwindled. Steve Benjamin, the director of statistical programming and Bio's boss, told Bio that as a result of the loss of Lilly work, Bio's team would be dismantled, and his subordinates would need to find work on different teams. Benjamin also added Bio's name to the company's internal job-placement tracker to try to find him a new management position, and Benjamin instructed Bio to assist his team members in finding permanent jobs elsewhere in the company. But a manager-level position could not be found for Bio, and in June 2015 inVentiv fired him. Benjamin told Bio he was being let go because of the loss of statistical-programming work from Lilly.

After Bio was fired his former subordinates either resigned or were reassigned. Two took on permanent positions working for Benjamin, for whom they had already been doing temporary work. The remaining six programmers were temporarily assigned to another manager, Aicha Bassile; five were given quality-review work, and the sixth allowed to finish assignments received before Bio's firing. Five of those six eventually moved to other unspecified projects on other teams, and the sixth person resigned.

A little over a year after he was fired, Bio sued inVentiv for race, nationality, and gender discrimination, as well as for retaliation, under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Relevant to this appeal—in which Bio presses only his claims of race and nationality discrimination—Bio repeatedly admitted at his deposition that he had no evidence of discrimination. He asserted, however, that he had made out a prima facie case of discrimination, relying upon this court's line of mini-reduction-in-force cases, the hallmark of which "'is that the job really was not eliminated at all;

because the fired employee's duties were absorbed by others, they were effectively "replaced," not eliminated.'" *Filar v. Bd. of Educ.*, 526 F.3d 1054, 1060 (7th Cir. 2008) (quoting *Bellaver*, 200 F.3d at 495). Bio argued his job was absorbed, not eliminated, bypassing the usual requirement that he provide evidence of a similarly situated person treated better than him. Bio also argued the reason given for his firing was pretextual and intended to disguise racial animus.

The district court entered summary judgment for inVentiv on Bio's claims. Although the court agreed with Bio that his case should be analyzed under the mini-reduction-in-force framework, and that he had proved a prima facie case, the court ultimately concluded that no reasonable jury could find that inVentiv's stated basis for firing Bio—the loss of statistical-programming work originating from Lilly—was pretextual.

On appeal, Bio maintains he proved a prima facie case of discrimination under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The parties agree Bio met the first three elements of a prima facie case (belonging to a protected class, satisfying his employer's legitimate expectations, and suffering an adverse employment action), but they disagree over the final element, or even what the correct final element is. Bio asserts his was a mini-reduction-in-force firing, *see, e.g.*, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 495 (7th Cir. 2000), and in such cases, the plaintiff need not establish that a similarly situated person was treated better than him (the usual fourth element), but only that his duties were absorbed by persons not of his protected class. *Id*. For its part, inVentiv argues Bio's firing was not a mini-reduction-in-force because his duties were eliminated not absorbed by others. InVentiv reasons that Bio's prima facie case must fail because he did not provide any evidence of a similarly situated person treated better than him.

InVentiv is correct that this is not a mini-reduction-in-force case. The work Bio's team was hired to perform had largely dried up in the months leading up to Bio's firing—that is uncontested. Bio himself explained his subordinates were mostly assigned to work under different managers for different teams, doing different work. (Bio estimated that 80% of his subordinates' work was for other teams.) The work Bio and his team originally performed was disappearing, so this is not a mini-reduction-in-force case. *See Filar*, 526 F.3d at 1060.

So to present a prima facie case of discrimination, Bio had to provide evidence there was a similarly situated person not in his protected class who was treated better

than he was. *See McDonnell Douglas Corp.*, 411 U.S. at 802; *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 368 (7th Cir. 2019). Bio failed to carry this burden. Specifically, he provided no evidence that any other manager kept their job after experiencing a similar decrease in workflow. Accordingly, Bio has not proved a prima facie case of discrimination.

Even if Bio had proved a prima facie case, summary judgment for inVentiv was proper because, as the district court correctly concluded, Bio cannot show that inVentiv's explanation for his firing was pretextual. According to inVentiv, Bio was fired because the type of work his team was hired to perform was diminishing, and by mid-2015 had all but disappeared. As a result, inVentiv no longer needed a team dedicated to performing that work. Bio failed to provide any evidence that inVentiv's basis for firing him was pretextual. Accordingly, a jury would have no ground on which to conclude that inVentiv's stated reason for firing Bio was "cover for illegal discrimination." *Johal v. Little Lady Foods, Inc.*, 434 F.3d 943, 946–47 (7th Cir. 2006).

For these reasons we AFFIRM the judgment of the district court.