# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 05-3464

WISCONSIN MUTUAL INSURANCE CO., *et al.*,

*Plaintiffs-Appellants*,

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 04-C-0729-S—**John C. Shabaz**, *Judge*.

ARGUED FEBRUARY 23, 2006—DECIDED MARCH 20, 2006

Before EASTERBROOK, RIPPLE, and WOOD, *Circuit Judges*.

EASTERBROOK, *Circuit Judge.* Vaughn Larson was driving his van north on Interstate 90 in Wisconsin. As he moved into the right-hand lane, the van collided with a car driven by Danielle Skatrud, who was passing on the right. Larson brought the van to a safe stop. Skatrud could not control her car, crossed the median of the highway, and hit two cars traveling south. Skatrud and her two passengers died; the drivers of the cars that had been moving south sustained both personal injury and property damage. After indemnifying its clients, Wisconsin Mutual Insurance Company was subrogated to their rights and filed this suit under the Federal Tort Claims Act against the United

States, Larson's employer. A flurry of third-party claims and counterclaims was added to the litigation. After a bench trial, the district court concluded that Skatrud bore 70% of the responsibility for these events and Larson 30%.

The district court's initial judgment failed to specify the disposition with respect to every litigant. Two parties appealed from this non-final disposition. When this court noticed the problem, counsel asked the district court to enter a proper judgment. The district court responded with a new judgment, dated July 21, 2005, that still left some matters dangling. A motion asked the judge to fix this latest shortcoming. Meanwhile the appellants dismissed their premature notices of appeal on August 19 and simultaneously filed a new joint notice of appeal—also premature, given the pending motion, which led to the entry of a proper final judgment on August 25. No additional notice of appeal was filed, but under Fed. R. App. P. 4(a)(2) the notice of August 19 took effect when the real final judgment was entered. Nonetheless, the United States asks us to dismiss the appeal filed on August 19, contending that it is "a nullity" because the case was still in the court of appeals until we issued the mandate on the initial premature appeals. That step did not occur until August 24.

The United States rests this line of argument on the proposition that only one court at a time has jurisdiction. "[A] federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously. The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). See also, e.g., *Marrese v. American Academy of Orthopædic Surgeons*, 470 U.S. 373, 379 (1985); *Hovey v. McDonald*, 109 U.S. 150, 157 (1883); *Kusay v. United States*, 62 F.3d 192, 193-94 (7th Cir. 1995). That rule has

several qualifications, however, perhaps the foremost of which is that an appeal taken from an interlocutory decision does not prevent the district court from finishing its work and rendering a final decision. This is so for appeals concerning preliminary injunctions, see *Kusay*, 62 F.3d at 194; *Chrysler Motors Corp. v. Industrial Workers Union*, 909 F.2d 248, 250 (7th Cir. 1990); appeals from orders rejecting claims of official immunity, see *Apostol v. Gallion*, 870 F.2d 1335, 1337 (7th Cir. 1989); and appeals from orders that are non-final because of the district court's oversight, see *United States v. Bastanipour*, 697 F.2d 170, 173 (7th Cir. 1982). The rule summarized in *Griggs* is designed to prevent conflict among tribunals, as well as to prevent the waste of time and money that occurs if the district court changes a judgment after an appeal has been briefed. These interests are not implicated by allowing the district court to enter a proper final decision and thus permit a pending appeal to go forward.

Because the initial notices of appeal were premature, the district court acted within its jurisdiction by patching up the judgment to allow appellate review. What's more, even if the district court had lost authority to modify the judgment, that would not imply that a notice of appeal is "a nullity" just because it must be filed *in* the district court. A notice of appeal never poses any of the risks with which *Griggs* and its many predecessors are concerned. To see this, one has only to consider a case in which multiple aggrieved litigants want to appeal. With the rare exception of two or more notices delivered in a single envelope, one of these appeals will precede the rest. Under the United States' position, the first notice of appeal would disable the district court from accepting any other and thus prevent some litigants from obtaining appellate review. Nothing in any statute or rule supports such a silly outcome. Counsel for the United States conceded at oral argument that no statute, no rule, and no decision in the history of the United

States has treated a notice of appeal as "a nullity" just because another notice already was on file and a case therefore was "in" a court of appeals.

So we must address the merits, which does not take long. The plaintiffs (as we call all parties adverse to the United States) contend that whether Skatrud's conduct caused or aggravated the accident is a question of law, which we review de novo. That assertion is wrong. Causation is a question of fact, and our role after a bench trial is to determine whether the judge made any clearly erroneous finding. See Fed. R. Civ. P. 52(a); *Barber v. Ruth*, 7 F.3d 636, 642 (7th Cir. 1993); *Mucha v. King*, 792 F.2d 602, 605 (7th Cir. 1986). Plaintiffs' position appears to rest on a view that "ultimate" issues, or those that entail the evaluation of facts under a legal standard, are open to plenary appellate review. The Supreme Court has held otherwise. See *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709 (1986); *Pullman-Standard v. Swint*, 456 U.S. 273 (1982). Causation is a question for the jury in a tort suit, which means that it is also reviewed under the clearly erroneous standard when the judge serves as trier of fact.

The district judge concluded that Skatrud had been speeding and weaving through traffic; he estimated her speed conservatively at 75 miles per hour. (Witnesses had put the speed as high as 100 miles per hour.) When she attempted to pass Larson on the right—a violation of Wisconsin law even on a divided highway unless it can be accomplished safely, see Wis. Stat. §346.07(2), §346.08(2), (3)—she failed to anticipate the possibility that the driver in the left lane would move to the right. Because she was not keeping a lookout, she was surprised when Larson's van touched her car. (The force was not great; after the accident the van showed paint from Skatrud's car but had not been dented.) The combination of surprise and speed led Skatrud, who at 16 years old had been driving for only three months, to lose control and cross the median. Larson

bore some of the fault, for better monitoring of the rear-view mirror would have shown him that Skatrud was coming up fast, but the district judge rated Skatrud's responsibility as the greater—for she *knew* what was happening in front of her (while she may have been in Larson's blind spot for critical moments), knew that she was speeding, and should have anticipated the possibility that the van's driver would not see her approach and would start to move right.

Plaintiffs' appellate strategy is to isolate each of these events—speed, weaving, passing on the right, poor look-out, poor anticipation of other drivers' potential actions, and inexperience—and contend that it alone did not cause the accident. That may be so, but these events did not occur in isolation. They contributed to the accident at least as much as did Larson's careless drift into the right lane while a speeder was passing there. The district judge's conclusion that Skatrud bore more than half of the responsibility cannot be called clearly erroneous.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*