NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 4, 2018*
Decided April 5, 2018

**Before**

DIANE P. WOOD, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 16-1159

| | |
|---|---|
| LESTER DOBBEY, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of |
| | Illinois, Eastern Division. |
| *v.* | |
| | No. 10 C 3965 |
| JACKIE MILLER, *et al.*, | |
| *Defendants-Appellees*. | Robert M. Dow, Jr., |
| | *Judge*. |

**O R D E R**

Lester Dobbey, an inmate at Stateville Correctional Center in Illinois, suffered from abdominal pain for three years while medical staff tried to find the cause. Dissatisfied that among the many treatments and tests he received, the medical staff did not administer a test for a bacterial infection, he has sued the prison staff, asserting that they were deliberately indifferent to his pain in violation of the Eighth Amendment.

---

* We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. See FED. R. APP. P. 34(a)(2)(C).

The district court entered summary judgment for the defendants. Because the medical staff supplied regular, ongoing care in attempting to resolve his pain, and the omission of the one test is at most negligence, we affirm the judgment.

Before reaching the merits, we address whether this appeal is timely. See *Okoro v. Bohman*, 164 F.3d 1059, 1061 (7th Cir. 1999). The district court entered judgment on August 26, 2015. Dobbey did not learn of the judgment until January 12, 2016. Soon after, on January 25, the district court docketed from Dobbey a notice of appeal and a motion to reopen the time to file an appeal. Dobbey's motion asked the "Court to Reopen the time to File an Appeal, And Allow his Late-Notice of Appeal to be docketed." On March 4, the court granted Dobbey's motion to reopen. See FED. R. APP. P. 4(a)(6). The defendants argue that we lack jurisdiction because Dobbey filed his one notice of appeal more than 30 days after judgment, but not within the 14 days after the court granted the motion to reopen, see FED. R. APP. P. 4(a)(1)(A), (a)(6).

The appeal is timely. Appellate Rule 4(a)(6) provides: "The district court may reopen the time to file an appeal for a period of 14 days after the date when its order to reopen is entered." This jurisdictional rule imposes a ceiling, not a floor, on the time to appeal. See *Bowles v. Russell*, 551 U.S. 205, 207–10, 213 (2007). When Dobbey filed his notice of appeal with his motion to reopen, he asked the court to docket the notice if it granted the motion. The notice became effective when the court granted his motion because a prematurely filed notice of appeal becomes effective after the district court enters the order that opens the time to appeal. See *Wis. Mut. Ins. Co. v. United States*, 441 F.3d 502, 505 (7th Cir. 2006) (in the context of Rule 4(a)(2), treating premature notice of appeal as effective to confer appellate court jurisdiction after district court entered final judgment). Because Dobbey had filed his notice of appeal by the time the district court opened the 14-day time for filing, his appeal is timely.

With jurisdiction confirmed, we address Dobbey's claim that prison staff ignored his abdominal pain. We review the record in the light most favorable to Dobbey. *Estate of Perry v. Wenzel*, 872 F.3d 439, 452 (7th Cir. 2017). Dobbey first reported abdominal pain in September 2008. He told LaTonya Williams, a physician's assistant at Stateville, that for several months he experienced pain, constipation, and blood in his stool. A stool test, however, revealed no blood. A week later, Dr. Liping Zhang evaluated Dobbey for abdominal pain, prescribed a stool softener, and told Dobbey to drink more fluids and to rub his stomach to alleviate pain. Four months later, after telling the medical staff that the blood in his stool had decreased, he received a different stool softener.

The abdominal pain, however, continued into 2009. Dr. Zhang examined Dobbey in March. Tests ruled out hemorrhoids as a cause. The doctor's notes from this exam appeared to suggest that she consider another test: "*H pylori . . . if not done.*" *H. pylori* (*Helicobacter pylori*) is a stomach bacteria that can cause abdominal pain. See CDC, *Helicobacter Pylori and Pepric Ulcer Disease, Center for Disease Control & Prevention*, http://www.cdc. gov/ulcer/keytocure.htm (September 28, 2006); STEDMAN'S MEDICAL DICTIONARY 859 (28th ed. 2006). At a follow-up appointment in April, Dr. Zhang physically examined Dobbey and found that his abdomen and anus were normal; he did not undergo any stomach bacteria tests at this time.

The medical staff continued to see Dobbey for abdominal pain during the second half of 2009. In June Dobbey again reported blood in his stool, but his stool sample showed no blood, only mucus. Dobbey said that his abdominal pain occurred mostly after meals. With this information, Williams diagnosed Dobbey with gastroesophageal reflux disease (GERD) and increased blood pressure. She recommended blood-pressure monitoring, stool sample analysis (a note reads "stool *H–pylori,*"), an increase of clear fluids, and a prescription for acid reflux and antacids. Dr. Zhang physically examined Dobbey in August. The result was normal. For his chronic pain, she continued his stool-softener prescription, added fiber supplements, and told him to drink more fluids. His stool was not tested for *H. pylori*.

Throughout 2010, Dobbey's abdominal pain persisted, leading to more and different treatments. Williams told Dobbey to alternate taking Zantac (an antacid) and Prilosec (for acid reflux)—to see which was more effective. Both treat GERD. Mayo Clinic, *Gastroesophageal reflux disease (GERD)*, https://www.mayoclinic.org/diseases-conditions/gerd/diagnosis-treatment/drc-20361959. Dobbey reported that his abdominal pain continued no matter what he did. Medical staff referred Dobbey to the unit's medical director for further study, and he told Dobbey to continue taking Zantac. Williams saw Dobbey again in August because his abdominal pain remained unresolved. In September, another physician evaluated Dobbey for his abdominal pain and wrote "*H pylori* asses [*sic*]." This physician prescribed Mylanta (an over-the-counter acid reducer) and Prilosec. A medical appointment in October, where Dobbey reported intermittent abdominal pain, led to more blood tests, and a meeting the next month with the prison's medical director. At that meeting Dobbey complained of abdominal pain, though he reported no blood in his stool. The medical director told Dobbey to continue taking Prilosec, ordered an x-ray of Dobbey's abdomen, and referred Dobbey to the University of Illinois at Chicago Medical Center for testing.

The pain resolved itself in 2011. Dobbey was nauseous one day in January, and medical staff admitted him to the infirmary. He was diagnosed with a fever and the flu. Then he was hospitalized for three days for nausea, vomiting, and abdominal pain. After he was prescribed antibiotics, the prison's medical director ordered an *H. pylori* test. It showed elevated levels of *H. pylori* bacteria. An accompanying informational sheet stated, "it is virtually impossible to remove *H. pylori* from your digestive tract without some **form of treatment**…." (emphasis in original). The medical director saw Dobbey in March and prescribed Zantac and Mylanta for Dobbey's abdominal pain and scheduled him for an endoscopy, which revealed no abnormalities. Dobbey reported to Williams four months later that he had been sick with diarrhea, and she prescribed him Kaopectate. The following month a prison physician noted that Dobbey's medical records and labs were normal. He appeared healthy and has remained so.

After Dobbey filed grievances (to no avail) to protest the treatment of his abdominal pain, he filed this lawsuit. Dobbey asked the district court to recruit counsel three times, but the court denied his requests. Because the defendants objected to most of Dobbey's discovery requests, he filed at least six motions to compel and two motions for sanctions. A magistrate judge granted in part some of Dobbey's motions, but denied his requests for sanctions. Eventually the parties cross-moved for summary judgment. The court granted the defendants' motion and denied Dobbey's. It ruled that although Dobbey had suffered from an objectively serious medical condition, the medical defendants had not deliberately ignored his condition, and the nonmedical defendants were entitled to defer to the medical staff's judgment.

We review the district court's decision *de novo*. *Estate of Perry*, 872 F.3d at 452. Prison officials violate the Eighth Amendment when they are deliberately indifferent to the serious medical needs of prisoners; negligence is not enough. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To survive summary judgment, Dobbey needed to present evidence that his medical condition was objectively serious and that the defendants knew of and disregarded an excessive risk to his health by, for example, persisting in treatment known to be ineffective. See *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Petties v. Carter*, 836 F.3d 722, 729–30 (7th Cir. 2016) (*en banc*). We will assume that Dobbey's abdominal pain was "objectively" serious, see *Edwards v. Snyder*, 478 F.3d 827, 830–31 (7th Cir. 2007), and focus on whether he presented evidence that the defendants were deliberately indifferent by knowing about yet ignoring his pain or underlying risks to his health.

Dobbey has not presented evidence of deliberate indifference. The medical staff regularly saw Dobbey for his abdominal pain and attempted to assess its causes with a battery of tests and physical exams. They ruled out hemorrhoids and eliminated Dobbey's complaints of bloody stool. As Dobbey's pain persisted, they acquired more data, including the report from Dobbey that his pain occurred after meals, which led the staff to treat him for GERD. When the pain still continued, he received an x-ray, an endoscopy, and other medicine. The care from multiple professionals lasted a long time, and eventually the pain ended.

Dobbey responds that these approaches did not, however, include a test for *H. pylori*. He observes that medical notes from 2009 and 2010 suggest that the medical staff considered testing Dobbey for *H. pylori*. Yet Dobbey was not tested for it until 2011, and that test revealed elevated levels. This two-year omission, Dobbey insists, shows deliberate indifference. But the absence of one test is not evidence of deliberate indifference unless the treatment that he did receive "was so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate his condition." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) (internal quotation marks omitted). Nothing, however, suggests that Dobbey's other tests, exams, and medication (stool softeners, antacids, acid-reflux medicine) were not justified by his symptoms or were bound to worsen Dobbey's pain. To the contrary, these treatments manage GERD, see Mayo Clinic, *supra,* and resolved his stool issues.

We recognize that, as the medical staff treated and tested Dobbey in various ways to try to pinpoint the cause of his pain, they overlooked an additional, known test for *H. pylori* that might have yielded some benefit. But that omission amounts to at most negligence because prison doctors who try reasonable, though imperfect, approaches to address an inmate's symptoms, and eventually resolve the symptoms, do not violate the Eighth Amendment by omitting a different, possibly better approach. See *Proctor v. Sood*, 863 F.3d 563, 567–68 (7th Cir. 2017) (affirming entry of summary judgment for prison's doctors who, despite failing to order colonoscopy or endoscopy to diagnose inmate's abdominal pain, reasonably investigated inmate's pain in other ways); *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006) (reversing district court's refusal to enter judgment in favor of prison doctor where, despite a possibly superior alternative treatment, doctor's treatment of inmate was reasonable). Therefore the medical defendants were entitled to summary judgment.

The nonmedical defendants also properly received summary judgment. Prison officials are "entitled to defer to the judgment of jail health professionals so long as they

did not ignore the prisoner." *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) (internal quotation marks and brackets omitted). With the extensive treatment Dobbey received from the medical unit, nonmedical prison officials had no reason to suspect that Dobbey was receiving deficient care.

Dobbey also raises two procedural arguments, both unavailing. First he contends that the magistrate judge erred in denying some of his discovery motions. But "[t]rial courts retain broad discretion to limit and manage discovery under Rule 26 of the civil rules," and to decide whether to impose sanctions. *Geiger v. Aetna Life Ins. Co.*, 845 F.3d 357, 365 (7th Cir. 2017) (internal alterations and quotation marks omitted). Dobbey was able to obtain sufficient information to prosecute his case and the defendants reasonably explained their objections and delays. Under these circumstances, we will not second-guess the magistrate judge's ruling. See *Chatham v. Davis*, 839 F.3d 679, 686–87 (7th Cir. 2016).

Dobbey also contends that the district court unreasonably denied his requests for counsel. See *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (*en banc*). But the district court reasonably denied Dobbey's first two motions because Dobbey, a frequent litigator, did not assert that he had any disabilities that precluded him from litigating the case, and the legal issues that he raised did not exceed his skills. The court denied Dobbey's third request because Dobbey had effectively prosecuted his case up to that point. Those rationales fall within the bounds of the district court's discretion. See *id.* at 654–56. Dobbey replies that he was prejudiced without an attorney because without one he could not obtain an expert medical witness. But an expert would have to opine that the medical staff's persistent, though imperfect, attempts to resolve Dobbey's pain were so reckless that they approached intentional wrongdoing, see *Arnett*, 658 F.3d at 751. The record in this case would make finding such an expert unlikely.

We AFFIRM the district court's entry of summary judgment.