NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 17, 2020[*]
Decided September 2, 2020

**Before**

DIANE S. SYKES, *Chief Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 19-1711

| | |
|---|---|
| JESSE NORWOOD, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of |
| | Indiana, Fort Wayne Division. |
| | |
| *v.* | No. 1:15-cv-00249-SLC |
| | |
| EAST ALLEN COUNTY SCHOOLS, | Susan L. Collins, |
| *Defendant-Appellee*. | *Magistrate Judge*. |

## O R D E R

Jesse Norwood, an African-American special-education teacher, received a series of poor reviews and voluntarily quit his job with the East Allen County Schools in Indiana. He then sued the school district for discrimination, asserting that it forced him to resign because of his race. The district court entered summary judgment for the school district. Because no reasonable juror could conclude that Norwood was meeting

---

[*] We agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

the legitimate expectations of his job or that he was forced to resign, we affirm the judgment.

Norwood was hired in 2010 to teach special education for the East Allen County Schools. As a special-education teacher, he had additional obligations under state and federal law that other teachers did not. *See* Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–1482; 511 IND. ADMIN. CODE 7 (2017) (Indiana's corollary to the IDEA.). For each student on his roster, he was responsible for creating an individualized education plan to document the student's academic and behavioral goals, relevant progress, and needed services such as classroom accommodations, required courses, or counseling. He also had to ensure the student's receipt of the required services, update the education plan at a yearly conference, monitor progress, and regularly communicate with the student's parents and teachers.

Special-education teachers are evaluated in part by the district's special-services department. Members from that department annually review two of the education plans written by each teacher. A score of 50% or below is considered deficient. In Norwood's first year, both of his plans were deficient: one earned a score of 37.1% and the other 39.1%. In his second year, his two plans were scored at 55.8% and 42.5%. The next year after one of his plans was scored at 50%, he was placed on a "corrective action plan" for having received at least one inadequate score for three consecutive years. In his fourth and final year, the department reviewed three of Norwood's education plans and scored them at 68%, 50%, and 64%.

Norwood fared even worse in his other special-education obligations, such as providing services to students, conducting annual conferences, and meeting deadlines. In his second year, for example, he failed to ensure that one of his students received the counseling required under his education plan. When that student committed an expellable offense, the school could not expel him because the terms of his education plan were not being met. The next year Norwood failed to implement the required services on another student's education plan. The principal issued a written warning directing Norwood "to comply with state and local guidelines in regard[] to implementation and monitoring of a student['s] individualized education plan" and admonishing him that "failure to do so will be considered insubordination." Norwood, however, promptly missed the deadlines to finalize two students' education plans and failed to correct multiple errors on another student's plan, even after being directed to do so by the special-services department. In his last year, he missed other deadlines, presented a blank education plan to one student's parents, and on at least two occasions

excused a teacher—without first seeking permission to do so—from attending a mandatory annual conference.

Despite these failings, Norwood's principal ranked him as "effective" under a standard rubric on each of his four yearly evaluations. The rubric, which is used for special-education as well as general teachers, assesses performance in four domains—planning, leadership, instruction, and professionalism. Although the rubric was designed to be comprehensive, taking into account, for instance, a special-education teacher's additional responsibilities (such as creating individualized education plans or providing special services), Norwood's principal excluded those considerations and confined his evaluation to Norwood's performance of his general-education responsibilities across the four domains.

Norwood began to suspect he might be fired in late 2014 when administrators from the district and his school met with him to discuss performance concerns. They asked Norwood about his grasp of his obligations under state and federal law and about whether his students were receiving their required services. They also asked him to provide documentation that he was contacting parents, creating education plans that complied with state law, monitoring student progress, and ensuring that students received their required services. He later submitted only some of the documents. The group scheduled a meeting in two weeks to discuss next steps.

Soon thereafter, representatives from Norwood's union urged him to resign. Having met with the district's administrators, they concluded that there was enough evidence to terminate his contract. If he resigned, they noted, he could avoid the stigma of being fired. Norwood took their advice and resigned one day before he was scheduled to meet with the administrators.

Norwood then sued the East Allen County Schools for racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a), 1981. He asserted that the school forced him to quit despite having met his job expectations, as reflected by the "effective" rating he received on the school's evaluation rubric. He also asserted that white teachers who struggled to meet some of the job's expectations were extended multiple chances to improve before they were fired or forced to resign.

Proceeding with the parties' consent, 28 U.S.C. § 636(c), a magistrate judge entered summary judgment for the defendant. She concluded that Norwood's evidence did not raise a factual question regarding a prima facie case of discrimination: No

reasonable juror could find that Norwood was performing the essential functions of his job, that he suffered an adverse employment action, or that East Allen treated him worse than a similarly situated teacher of a different race.

On appeal Norwood challenges the summary-judgment ruling, but East Allen asserts that appellate jurisdiction is lacking because he failed to file a timely notice of appeal. East Allen maintains that Norwood did not file his self-styled "Belated Appeal" (stating that he had not received notice of the court's decision) until February 1, 2019—nearly four months after the district court entered judgment on September 28, 2018. The judge construed Norwood's filing as a motion to reopen the time to file an appeal, FED. R. APP. P. 4(a)(6), granted the motion, and gave him an additional 14 days to file a notice of appeal. Even then, he didn't file the notice until five weeks after the new deadline.

In response to jurisdictional memoranda we solicited from the parties, we concluded that we have jurisdiction over the appeal. We construed Norwood's motion to reopen ("Belated Appeal") as a timely notice of appeal because he filed it before the expiration of the reestablished deadline. *See Owens v. Godinez*, 860 F.3d 434, 437 (7th Cir. 2017).

East Allen continues to dispute the timeliness of Norwood's filing and argues that *Owens* is distinguishable. In *Owens* we treated the appellant's request for an extension of time to appeal as a timely notice of appeal because he filed it within the original 30-day window for filing the notice. *See* FED. R. APP. P. 3(c)(4) ("An appeal must not be dismissed for informality of form or title of the notice of appeal, or for failure to name a party whose intent to appeal is otherwise clear from the notice."). East Allen points out that Norwood did not file his motion to reopen until long after the original 30-day window had closed. Because Norwood filed his motion after the closure of the 30-day window (and before the district court had reopened the time for appeal), East Allen insists that this filing cannot be construed as a notice of appeal.

We stand by our earlier determination that this appeal is timely. Norwood's "Belated Appeal" met the requirements under Rule 3(c)(1) of the Federal Rules of Appellate Procedure: It named the parties and put the school district on notice that he intended to appeal the final judgment entered on September 28, 2018. *See Smith v. Barry*, 502 U.S. 244, 248–49 (1992). That Norwood filed it *before* the judge reopened the window to appeal does not affect its timeliness. A prematurely filed notice of appeal becomes effective after the district court enters the order that opens the time to appeal. *See* FED. R. APP. P. 4(a)(2) ("A notice of appeal filed after the court announces a decision or order—

but before the entry of the judgment or order—is treated as filed on the date of and after the entry."); *Wis. Mut. Ins. Co. v. United States*, 441 F.3d 502, 505 (7th Cir. 2006). Norwood's "Belated Appeal" became effective when the judge granted his motion to reopen the period within which to file it.

As for the merits, Norwood asserts that the school district forced him to quit his job because of his race. Tracking the framework created in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973), he first argues that the district court ignored evidence that he was meeting East Allen's legitimate expectations. He highlights his consistent "effective" ratings on the standard rubric and evidence that the rubric encompassed both general competency and performance of special-education duties.

But as the judge determined, no reasonable juror could conclude that Norwood was meeting all of the legitimate expectations of his job. Although the evidence shows that he repeatedly was scored as "effective" on the standard rubric, that rating was not based on a comprehensive evaluation. As his principal testified, he did not evaluate special-education teachers according to their performance of job-specific obligations not listed on the rubric (i.e., creating education plans and ensuring that special-education students received their mandated services). Moreover, Norwood did not point the district court to any evidence that countered East Allen's records that he struggled to provide requisite services to students, to meet deadlines, and to create education plans that complied with state law and the district's policies.[1] Given these other instances in which he fell short of expectations, an annual rating of "effective" on the standard rubric is not enough to create a factual question over whether he generally was meeting his employer's legitimate expectations.

---

[1]Norwood asks us to consider proposed facts that he introduced at summary judgment but that were disregarded by the district court because he failed to support them with specific citations to the record. He attaches to his appellate brief an edited version of his proposed statement of facts, now supplemented with record citations. But a district court "need consider only the cited materials" at the summary-judgment stage, FED. R. CIV. P. 56(c)(3), and even pro se litigants must follow the Rules of Civil Procedure, *McNeil v. United States*, 508 U.S. 106, 113 (1993). In any event, Norwood's proposed facts would not bear on the outcome of this appeal because they do not suggest that Norwood's suffered an adverse employment action, let alone one based on his race.

Even if Norwood could create a factual question on that point, we agree with the judge that no reasonable jury could conclude that he suffered an adverse employment action. *See McDonnell Douglas*, 411 U.S. at 802–03; *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017). Norwood maintains that his resignation was a constructive discharge because the union representatives pressured him to quit at East Allen's behest. But Norwood did not produce any evidence that his working conditions had become intolerable: "[A] working condition does not become intolerable or unbearable merely because a prospect of discharge lurks in the background." *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010) (quotation marks omitted).

Finally, Norwood asserts that the judge ignored evidence that East Allen treated its struggling white teachers better than he. But because no reasonable juror could conclude that he was meeting his employer's expectations or that he suffered an adverse employment action, we need not reach this issue. *See McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 368 (7th Cir. 2019).

AFFIRMED