In the

# United States Court of Appeals
## For the Seventh Circuit

No. 17-1920

GARY WROLSTAD,

*Plaintiff-Appellant,*

*v.*

CUNA MUTUAL INSURANCE SOCIETY,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 15-cv-798-jdp — **James D. Peterson**, *Chief Judge.*

ARGUED JANUARY 8, 2018 — DECIDED DECEMBER 18, 2018

Before EASTERBROOK and SYKES, *Circuit Judges*, and
BUCKLO, *District Judge.*[*]

SYKES, *Circuit Judge.* For 25 years Gary Wrolstad worked
at CUNA Mutual Life Insurance Society in Madison,
Wisconsin,[1] eventually becoming a financial reporting

---

[*] Of the Northern District of Illinois, sitting by designation.

[1] CUNA Mutual is now known as CMFG Life Insurance Company. We
use the insurer's name as it was at the time of the events in this suit.

manager. In 2009 his position was eliminated in a corporate restructuring. He was then 52 years old. At his supervisor's suggestion, Wrolstad applied for several vacant positions at the company, including a job as a pension participant support specialist. CUNA Mutual ultimately hired a 23-year-old for that position. Wrolstad was at the end of the road with CUNA Mutual, so he signed a severance agreement waiving all claims against the company in exchange for 50 weeks of severance pay. He left CUNA Mutual on December 30, 2009.

Months later Wrolstad filed a complaint with the Madison Equal Opportunities Commission accusing his former employer of age discrimination. CUNA Mutual denied the charge and argued that the waiver in the severance agreement barred the claim. A Commission investigator dismissed the complaint and Wrolstad appealed. On December 22, 2010, CUNA Mutual sent Wrolstad a letter explaining in no uncertain terms that it would sue to enforce the waiver if he did not drop his appeal by January 10. Wrolstad refused, and on January 28, 2011, CUNA Mutual filed a breach-of-contract suit in Wisconsin state court.

On November 21, 2011, Wrolstad filed a second complaint with the Commission accusing CUNA Mutual of retaliating against him for filing his first complaint. In 2015 he transferred both claims to the Equal Employment Opportunity Commission ("EEOC"), and the EEOC issued a right-to-sue notice. Wrolstad then sued CUNA Mutual in federal court alleging claims for age discrimination and retaliation in violation of the Age Discrimination in Employment Act ("ADEA" or "the Act"), 29 U.S.C. §§ 621, *et seq.* A district judge entered summary judgment for CUNA Mutual, ruling

that the age-discrimination claim lacked evidentiary support and the retaliation claim was time-barred.

We affirm. Wrolstad's effort to revive his age-discrimination claim rests primarily on new arguments and evidence that he did not bring to the district judge's attention. That's a forfeiture, but the arguments also fail on the merits. And the judge correctly held that the retaliation claim is barred because Wrolstad's retaliation charge was untimely. The retaliation claim accrued when CUNA Mutual sent the letter to Wrolstad announcing its unequivocal decision to sue to enforce the waiver in his severance agreement. Wrolstad waited more than 300 days to file his retaliation charge with the Commission.

## I. Background

CUNA Mutual sells insurance products to credit unions and their members. Wrolstad began working for the company in 1984 and in the ensuing years held a number of jobs. In 2006 he was promoted to the position of financial reporting manager. Three years later the company eliminated his position in a corporate restructuring. Wrolstad's supervisor notified him of the decision in the fall of 2009 and encouraged him to apply for other positions within the company before the restructuring took effect at the end of the year.

Wrolstad, then age 52, did just that. He applied for five vacant positions, including (as relevant here) an open spot as a pension participant support specialist. Support specialists answer inquiries from credit-union members concerning their investment vehicles, so strong communication skills and knowledge of the intricacies of the relevant investment instruments are a must. Support specialists are also expected

to identify sales opportunities and refer them to other employees who sell investment products. The salary range for the position was $32,390–$52,665.

One hundred candidates applied for the job. On December 14 Wrolstad's online application was forwarded to Jeffrey Zimmer, the hiring manager. Wrolstad had an initial screening interview with CUNA Mutual's external recruiter the next day, but the screener gave him mixed reviews. The interview notes state that Wrolstad was "very overqualified" for the job but wanted to stay with the company. Wrolstad told the screener that he was willing to work for $55,000, which was $20,000 less than his salary as a financial reporting manager but above the range for the support-specialist position.

Wrolstad didn't get a second interview. Zimmer later explained that the $55,000 salary demand was disqualifying. Zimmer also declined to interview the three other internal candidates whose applications were forwarded with Wrolstad's. Instead Zimmer offered the job to Joshua Logemann, a 23-year-old external candidate. Logemann had experience in financial institutions and one-on-one customer service, and Zimmer believed he was the best fit for the job. Zimmer also believed that Logemann was well-spoken and personable—both essential traits for a support specialist. And unlike Wrolstad, Logemann's salary goal—$35,000— was within the range for the position.

Wrolstad did not find another job at CUNA Mutual. On December 30, 2009, he signed a severance agreement accepting about $70,000 in severance pay in exchange for a release of all claims against the company arising on or before the date of the agreement. He left CUNA Mutual that same day.

In March 2010 Wrolstad filed a charge with the Madison Equal Opportunities Commission alleging that CUNA Mutual discriminated against him on the basis of his age when it eliminated his position and refused to hire him for another job. The company denied the allegations and argued that Wrolstad waived this claim in his severance agreement. The Commission dismissed the charge, finding no probable cause.

Wrolstad filed an administrative appeal of that decision. Under the Commission's procedures, the appeal entitled him to conduct discovery and take depositions. CUNA Mutual responded with a letter dated December 22, 2010, announcing that it would sue to enforce the waiver if Wrolstad did not drop his appeal:

> If Mr. Wrolstad pursues this appeal, CUNA Mutual will file a breach of contract action against him in state court. CUNA Mutual will either seek the rescission of the agreement and the return of the more than $70,000 in severance payments that it paid to Mr. Wrolstad, with interest, or the enforcement of the agreement and damages against Mr. Wrolstad in the amount of the costs and fees CUNA Mutual incurred … .

> If Mr. Wrolstad's appeal … is still active on January 10, 2011, CUNA Mutual will understand that he intends to move forward despite his clear and binding waiver, and CUNA Mutual will take every action necessary to make itself whole.

Wrolstad did not withdraw his appeal. On January 28, 2011, CUNA Mutual sued him for breach of contract in Wisconsin state court.

On November 21, 2011, Wrolstad filed a second charge with the Commission accusing CUNA Mutual of retaliating against him for pursuing his age-discrimination claim by seeking to enforce the waiver. In 2012 the state court dismissed CUNA Mutual's contract suit, reasoning that the Commission should determine the waiver's enforceability. In 2015 a hearing examiner suggested that Wrolstad transfer his claims to the EEOC and he obliged. The EEOC dismissed the claim for age discrimination and declined to pursue the retaliation claim, issuing a right-to-sue notice on February 29, 2016.

Wrolstad then filed this action in federal court alleging that CUNA Mutual discriminated against him on the basis of age when it eliminated his position and declined to hire him for any of the five other jobs for which he applied. He also alleged that the company retaliated against him by threatening suit to enforce the severance agreement and following through on that threat when he refused to drop his administrative appeal.

After discovery CUNA Mutual moved for summary judgment, arguing that Wrolstad lacked evidence that his age was the "but for" cause of any of the challenged job actions—first, the company's decision to eliminate his job, and next, its refusal to hire him for five other positions. Wrolstad's response to the motion focused on the elimination of his old job and the company's refusal to hire him for the support-specialist position; he conceded that he could not link the company's other decisions to his age. Ruling on

this narrowed claim, the judge held that Wrolstad produced no evidence to support an inference that the company's decision to eliminate his job was motivated by his age. Likewise, the judge ruled that Wrolstad lacked evidence showing that CUNA Mutual refused to hire him for the support-specialist position because of his age.

CUNA Mutual also sought summary judgment on the retaliation claim, arguing that it was both untimely and failed on the merits. The judge addressed only the first argument, holding that the retaliation claim was time-barred because Wrolstad filed his retaliation complaint with the Commission more than 300 days after the claim accrued.

## II. Discussion

Wrolstad asks us to remand for a trial on both his age-discrimination and retaliation claims. He has narrowed the focus of his age-discrimination claim further still, dropping his contention that CUNA Mutual eliminated his job because of his age. Instead, he concentrates his argument on the company's refusal to hire him for the support-specialist position. We review a summary judgment de novo. *Boston v. U.S. Steel Corp.*, 816 F.3d 455, 462 (7th Cir. 2016).

### A. Age-Discrimination Claim

The ADEA protects workers 40 years of age and older from age-based employment discrimination. As relevant here, the Act makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual [in the protected class] … because of such individual's age." 29 U.S.C. § 623(a)(1). To prevail on an age-discrimination claim, the plaintiff must prove that his age was the "but-for" cause of the challenged job action. *See Gross v. FBL Fin. Servs., Inc.*,

557 U.S. 167, 177–78 (2009). In other words, under the ADEA "it's not enough to show that age was *a* motivating factor. The plaintiff must prove that, but for his age, the adverse action would not have occurred." *Martino v. MCI Commc'ns Servs., Inc.*, 574 F.3d 447, 455 (7th Cir. 2009). "In this respect, the ADEA is narrower than Title VII … [because] Title VII protects against mixed-motive discrimination." *Carson v. Lake County*, 865 F.3d 526, 532 (7th Cir. 2017).

Wrolstad may carry his burden by presenting direct or circumstantial evidence that CUNA Mutual took the challenged job action against him because of his age. *Id.* at 532–33. Alternatively, he may proceed under the *McDonnell Douglas* burden-shifting approach by producing evidence that a similarly situated person not in the protected class was treated more favorably. *Id.* at 533 (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)). If he does so, the burden shifts to CUNA Mutual to articulate a legitimate, nondiscriminatory reason for the challenged action. *Id.* Under this alternative method of proof, Wrolstad then has the burden to show that the stated reason was a pretext for discrimination. *Id.* Regardless of how the plaintiff chooses to proceed, the basic question at the summary-judgment stage is whether the evidence as a whole would allow a reasonable jury to find that the plaintiff suffered an adverse job action because of his age. *Id.*; *see also Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

Wrolstad's arguments on appeal do not fit neatly into one methodological basket or the other. He first contends that the judge ignored what he deems direct evidence of age-based animus. But the evidence Wrolstad cites either does not suggest discriminatory intent—for example, purported

"irregularities" in CUNA Mutual's hiring process—or was not brought to the district court's attention and cannot be asserted for the first time on appeal. Wrolstad also argues that the district judge made improper assumptions about his qualifications for the support-specialist position and wrongly inferred that his salary demand was the reason Zimmer didn't hire him. But regardless of whether Wrolstad's background and salary requirements led those reviewing his application to perceive him as over- or underqualified for the job, there is no dispute that Wrolstad lacked the one-on-one customer-service experience that was an important job qualification or that Wrolstad's salary goal was above the high end of the position's pay range.

Wrolstad insists that Zimmer "all but ignored" the four older, internal candidates and points to evidence suggesting that Logemann's youth was explicitly taken as a factor in his favor. But Wrolstad did not rely on this evidence below, so we can hardly fault the judge for not considering it. As the party opposing summary judgment, it was his responsibility to "inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered." *Milligan v. Bd. of Trs. of S. Ill. Univ.*, 686 F.3d 378, 389 (7th Cir. 2012). Because Wrolstad failed to bring this evidence to the district judge's attention, he has forfeited his right to rely on it on appeal. *Packer v. Trs. of Ind. Univ. Sch. of Med.*, 800 F.3d 843, 849 (7th Cir. 2015).

Even if we were to consider this new material, however, it's not enough to satisfy Wrolstad's evidentiary burden. CUNA Mutual's decision to focus on Logemann after screening out other candidates does not on this record raise an inference of age discrimination. Wrolstad points to notes

from Logemann's screening interview suggesting that his youth was viewed as a positive factor. The screener wrote: "I think once working for the company that [Logemann] would grow and learn quickly and *inevitably stay with the company for many years to come* as he has been actively trying to find a foot in the door here." (Emphasis added.) This passage doesn't show that CUNA Mutual declined to hire Wrolstad for this position because of his age. The note highlights Logemann's potential for longevity, but it ties that potential to his enthusiasm and persistent effort "to find a foot in the door here." Indeed, the screener's notes indicate that Logemann told her that he had applied for another position with the company three months earlier.

Wrolstad argues that "potential [for] longevity" is just a proxy for age, relying on *Sharp v. Aker Plant Services Group*, 726 F.3d 789, 800 (6th Cir. 2013). But in *Sharp* the employer specifically tied longevity to the plaintiff's age, *id.* at 794, and that explicit reference led the court to conclude that the employer's "asserted business concern—potential longevity with the company—[was] nothing more than a proxy," *id.* at 800. In contrast, here the screener's note did not discuss Logemann's potential for longevity in reference to age. Rather, the screener explicitly tied that potential to age-neutral factors—that is, his enthusiasm and persistence. *Sharp* is not analogous.

Wrolstad also argues that the judge gave his qualifications short shrift. He maintains that a reasonable jury could conclude that he was more qualified than Logemann for the support-specialist job, but that's not the core inquiry here. Wrolstad needs evidence that his age was the but-for cause of the company's decision not to hire him for the position.

CUNA Mutual articulated several legitimate nondiscrimina-
tory reasons for preferring Logemann: (1) he had customer-
service experience (Wrolstad did not); (2) he showed great
enthusiasm for the position; and (3) he was willing to work
for a salary within the range established for the job
(Wrolstad was not). No evidence suggests that these reasons
were pretextual. The judge was right to enter summary
judgment for CUNA Mutual on the age-discrimination
claim.

## B. Retaliation Claim

The ADEA also prohibits retaliation for activity protected
by the Act. More specifically, the Act makes it unlawful for
an employer to "discriminate against any of his employees
or applicants for employment … [for] oppos[ing] any prac-
tice made unlawful by this section" or because the employee
or applicant "has made a charge … under this chapter."
29 U.S.C. § 623(d).

Before initiating a lawsuit under the Act, a claimant must
first file a charge with the EEOC or equivalent state agency.
As relevant here, the charge must be filed within 300 days of
the unlawful practice. *See id.* § 626(d)(1)(B). Under the so-
called *Ricks* rule, the clock for this limitations period com-
mences "when an employer communicates an adverse
employment decision to the employee, not when the full
consequences of that action are felt." *Gustovich v. AT&T
Commc'ns, Inc.*, 972 F.2d 845, 847 (7th Cir. 1992) (citing *Del.
State Coll. v. Ricks*, 449 U.S. 250 (1980)).

In *Ricks* the Supreme Court held that a professor's claim
for discriminatory denial of tenure accrued on the day the
college informed him of the adverse tenure decision, not on

the day the professor's employment actually ended. 449 U.S. at 261–62. To start the limitations clock, however, the employer's decision must be "final, ultimate, [and] non-tentative," and the employee must receive "unequivocal notice" of it. *Draper v. Martin*, 664 F.3d 1110, 1113 (7th Cir. 2011) (alteration in original) (quoting *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 637 (7th Cir. 2004)).

Applying the *Ricks* rule here, Wrolstad's retaliation claim accrued on December 22, 2010, when CUNA Mutual sent the letter giving him clear notice of its decision to sue to enforce the waiver in his severance agreement—not when the company followed through on that decision one month later on January 28, 2011. The letter unequivocally communicated a firm and final decision to enforce the waiver—in court if necessary—in response to Wrolstad's pursuit of his age-discrimination charge. The letter explained: "If Mr. Wrolstad pursues this appeal, CUNA Mutual will file a breach of contract action against him in state court," "will either seek the recession … or the enforcement of the agreement," and "will take every action necessary to make itself whole." Wrolstad filed his retaliation complaint with the Commission more than 300 days after he received notice of CUNA Mutual's decision to sue to enforce the waiver. That was too late.

Wrolstad resists this conclusion by insisting that CUNA Mutual's decision was not final because it was conditional. The Supreme Court rejected a similar argument in *Ricks*. *See* 449 U.S. at 260. There the college informed the professor by letter that his tenure application was denied, but the letter "explicitly held out … the possibility that he would receive tenure if the Board sustained his grievance." *Id.* The EEOC

argued that the letter did not communicate a "final" decision because it was conditioned on the outcome of the grievance process. *Id.* The Court rejected this argument, noting that the college characterized the letter as its "official position." *Id.* So too here: CUNA Mutual's letter firmly and unequivocally articulated its decision to sue Wrolstad if he pursued his appeal.

Wrolstad relies on the Eleventh Circuit's decision in *Stewart v. Booker T. Washington Insurance*, which held that the limitations period "does not run until the plaintiff is told that she is actually being terminated, not that she *might* be terminated *if* future contingencies occur." 232 F.3d 844, 849 (11th Cir. 2000). But the facts in *Stewart* are not remotely comparable. There a radio station advised its employees in a meeting that their "jobs *may* be in danger" if a possible sale of the station occurred but that "nothing was definite yet." *Id.* The tentative state of affairs in *Stewart* starkly contrasts with CUNA Mutual's final, unequivocal decision.

Alternatively, Wrolstad argues that CUNA Mutual's lawsuit was a discrete retaliatory act that started its own limitations clock. This argument rests on *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), which explains that a plaintiff who misses the deadline to file a charge based on one discrete discriminatory act is not barred from filing charges based on other discrete discriminatory acts "so long as the [later] acts are independently discriminatory and charges addressing those acts are themselves timely filed." *Id.* at 113. But the later act—the one *within* the limitations period—must be *discrete* and *independently discriminatory*. Here CUNA Mutual announced its decision to sue to enforce Wrolstad's waiver by letter on December 22 and carried out

that decision one month later on January 28. The letter and the suit itself are constituent parts of the same action, not discrete and independently retaliatory acts. The judge correctly concluded that Wrolstad's retaliation charge was untimely.

                                                    AFFIRMED.

BUCKLO, *District Judge*, dissenting. While I concur fully in my colleagues' assessment of Wrolstad's age discrimination claim, I part ways with them on the disposition of his retaliation claim. I agree that Wrolstad alleges a time-barred retaliation claim that accrued on the date CUNA Mutual threatened to sue him unless he abandoned pursuit of his discrimination claim. But I would hold that CUNA Mutual's filing of the threatened lawsuit was a distinct, independently retaliatory act that opened a new limitations period under *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). Because there is no dispute that Wrolstad's EEOC charge was timely if the statutory clock started ticking on the day CUNA Mutual filed suit, I would reverse the district court's conclusion that his retaliation claim based on that suit was time-barred.

In *Morgan*, the Court explained:

> Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180– or 300–day time period after the discrete discriminatory act occurred. The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed.

536 U.S. at 113.

Setting aside for a moment the arcane rules governing the accrual of claims under the federal antidiscrimination

statutes, it is clear that CUNA Mutual did two discrete things: First, it sent Wrolstad a letter threatening to sue him; and second, it actually sued him. Each of these things is unquestionably an "act" under any commonsense understanding of the word. Yet the majority concludes that they are "constituent parts of the same action." *Supra*, at 14.

The majority's view derives from *Delaware State College v. Ricks*, 449 U.S. 250 (1980). In *Ricks*—which involved a discriminatory termination—the Court held that the alleged discrimination occurred on the date the employer unequivocally communicated its final decision to deny Ricks tenure, not on the date Ricks's employment terminated. The Court observed that "termination of employment at Delaware State is a delayed, but inevitable, consequence of the denial of tenure" and went on to hold that because Ricks did not claim to have been "treated differently from other unsuccessful tenure aspirants," his discrimination claim accrued as of the date he learned of the university's final tenure decision. *Id.* at 257–58.

Unlike the termination of Ricks's employment, which required only the passage of time to become effective after the employer's announcement of its tenure decision, the filing of CUNA Mutual's lawsuit was not an "inevitable consequence" of its December 22 letter. To the contrary, it required further affirmative action on CUNA Mutual's part. In my view, this essential feature places Wrolstad's claim outside the realm of *Ricks* and its progeny, including *Draper v. Martin*, 664 F.3d 1110 (7th Cir. 2011), *Flannery v. Recording Industry Association of America*, 354 F.3d 632 (7th Cir. 2004), and *Gustovich v. AT & T Communications, Inc.*, 972 F.2d 845 (7th Cir. 1992), each of which, like *Ricks* itself, involved allegedly

discriminatory terminations, and into the realm of *Morgan*, particularly since the filing of CUNA Mutual's lawsuit is the specific action Wrolstad claims was unlawful.[2] *Cf. Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) (reversing and remanding under *Ricks* because the allegedly discriminatory termination decision was made outside the limitations period and the complaint alleged no "illegal acts subsequent to the date on which the decisions to terminate were made").

For the foregoing reasons, I respectfully dissent from Part B of the court's opinion.

---

[2] Paragraph 53 of the complaint, under the caption "Count 2: Retaliation," claims: "It was unlawful for CUNA to file a retaliatory lawsuit against Wrolstad because he opposed CUNA's discriminatory age practices."