In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-3565

DAVID MCDANIEL,

*Plaintiff-Appellant,*

*v.*

PROGRESS RAIL LOCOMOTIVE, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:17-cv-07904 — **John Robert Blakey**, *Judge.*

ARGUED SEPTEMBER 4, 2019 — DECIDED OCTOBER 9, 2019

Before ROVNER, SCUDDER, and ST. EVE, *Circuit Judges.*

ST. EVE, *Circuit Judge.* Plaintiff-appellant David McDaniel alleges his former employer, defendant-appellee Progress Rail Locomotive, Inc., unlawfully discriminated against him on the basis of age and retaliated against him for complaining about a superior, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–34. The district court ultimately granted summary judgment in favor of Progress Rail. We affirm.

McDaniel has not supplied evidence of any similarly situated employee that would allow a factfinder to determine whether any adverse employment action he experienced was the result of age discrimination or retaliation against him. Summary judgment was therefore appropriate.

## I. Background

### A. Progress Rail's Policies

Progress Rail, a manufacturer of diesel-electric locomotives and diesel-powered engines, requires its employees to comply with applicable Shop Rules governing health and safety in the workplace. Although McDaniel argues that Progress Rail's policies call for it to issue punishments in a progressive manner, the Shop Rules specifically state that violations or other inappropriate behavior "will be sufficient grounds for corrective disciplinary action ranging from reprimand to immediate discharge, depending upon the seriousness of the offense in the judgment of Management."

Shop Rule 31 prohibits the "[d]isregard of safety rules of common safety practices." One of these safety rules bars employees from lifting any load over 35 pounds without a mechanical lifting device. Another safety rule forbids the use of cell phones when operating equipment. Cell phones are also "not permitted to be out in the open or visible within the aisle lines of a manufacturing area," save for exceptional work-related purposes.

When Progress Rail has reason to believe an employee has violated a Shop Rule, its procedures call for an investigatory interview and a disciplinary hearing prior to issuing discipline. The employee's supervisor leads this process and memorializes it in various forms. At the disciplinary hearing, the

employee may call witnesses, and the employee is entitled to union representation. Raymond Maroni, Manager of Labor Relations, reviews the severity of each infraction and the employee's disciplinary history to ultimately determine whether and to what extent discipline is appropriate. When safety violations result in personal injury, a separate Safety Committee investigates the incident and determines any consequences.

## B. McDaniel's Conduct and Subsequent Investigations

Progress Rail hired McDaniel in 2005 and employed him as an "S15 Specialist, Material," also known as a Material Handler, for almost twelve years until his termination in April 2017. In this role, McDaniel was responsible for loading and unloading materials of varying size and weight, performing inventory counts, and assembling diesel engine kits for the production of railway locomotives. McDaniel was 55 years old at the time of his termination.

In 2016, Jonathan Howard, a Warehouse Supervisor, became McDaniel's direct manager. As Warehouse Supervisor, Howard oversaw nine employees, consisting of eight Material Handlers (two of whom were welders on temporary assignment) and one clerk. Howard reported to George Pekarik, the General Supervisor, until Pekarik was promoted in late-September 2016. At that time, Mark Walker became Howard's direct supervisor.

In August of 2016, McDaniel complained to Pekarik that Howard was not complying with Progress Rail's overtime equalization policies. McDaniel asserted that Howard was not regularly updating overtime equalization lists, was not offering overtime in order of seniority, and was not crediting opportunities to employees when they turned those

opportunities down. McDaniel testified that he complained Howard was giving overtime to "the younger workers." In response to McDaniel's complaint, Pekarik spoke to both McDaniel and Howard about Progress Rail's overtime opportunities, and said he expected both men to work towards resolving these issues between themselves.

At the end of August 2016, Howard issued a disciplinary notice to McDaniel for using his cell phone while on work equipment in violation of Shop Rule 31. On August 30, 2016, McDaniel, Howard, and Union Committeeman Marvin Thompkins attended the mandatory investigatory interview and disciplinary hearing. McDaniel contends Howard falsely accused him of talking on his cell phone, and he subsequently supplied phone records to Pekarik to prove he did not talk on his phone on the day in question. Whether McDaniel spoke on his phone is not dispositive, however, because he admitted during the investigatory process that his phone was "on top of the truck," which is still a violation of safety rules. McDaniel received a one-day suspension as discipline for this infraction.

In early September 2016, Howard again claimed McDaniel was using his cell phone at work, this time to take pictures. McDaniel volunteered his phone to Pekarik to confirm he did not take any photographs at work. Pekarik determined there was no violation, and therefore did not discipline McDaniel.

McDaniel also alleges that, sometime after this September incident, Howard assigned him to sweeping and general maintenance duties for three weeks after arbitrarily revoking his fork lift license. While on sweeping duties, however, McDaniel maintained the same position, under the same shift, and received the same rate of pay and benefits.

On February 16, 2017, McDaniel suffered a serious hand injury, crushing one of his fingers, while attempting to move a 106-pound piece of machinery by hand to extract a piece of plastic underneath it. During the first investigatory interview, McDaniel stated, "I saw some plastic under the idler gear (stub shaft). I *lifted* the Idler up to get the plastic and the Idler slipped and hit my middle finger." (emphasis added). In McDaniel's Report of Accident, submitted on April 4, 2017, McDaniel described the incident, "I noticed plastic was under the shaft so I reached over the Shaft, *lifting it up*, it slipped out of my hand and hit my finger." (emphasis added). Although McDaniel used the word "lift" several times in the course of reporting about this event, McDaniel now contends that he attempted to "shift" rather than "lift" the idler.

In March of 2017, when McDaniel returned to work after his injury, Howard conducted two investigatory interviews. McDaniel, Howard, and Union Representative Maurice Stovall attended both interviews, and Walker attended the second interview. Progress Rail also held two disciplinary hearings. McDaniel, Howard, Walker, and Stovall attended both hearings. Because the February 16, 2017, incident involved a safety infraction, Progress Rail's Safety Committee was the final arbiter. As part of its decision-making process, the Committee reviewed all documentation of the incident, including McDaniel's medical injury report, McDaniel's own statements, information about McDaniel's previous workplace injuries, and prior counseling McDaniel received regarding Progress Rail's lifting policies.[1] The Committee

---

[1] McDaniel is correct that Progress Rail's policy states it "will not take into account any prior infractions which occurred more than twenty-four months previously" when considering discipline. Although McDaniel

ultimately terminated McDaniel for violating Shop Rule 31. Howard was not a member of the Safety Committee.

McDaniel filed his charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on May 19, 2017. The EEOC issued a right to sue letter on August 8, 2017, and McDaniel timely filed his complaint on November 1, 2017. McDaniel alleged claims for age discrimination and retaliation under the ADEA, as well as retaliatory discharge under Illinois state law. The district court granted summary judgment to Progress Rail on all of McDaniel's claims. McDaniel now appeals on his two federal ADEA claims.

## II. Discussion

We review a district court's grant of summary judgment de novo. *C.G. Schmidt, Inc. v. Permasteelisa N. Am.*, 825 F.3d 801, 805 (7th Cir. 2016). "Summary judgment is proper if the moving party 'shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). We "consider all of the evidence in the record in the light most favorable to the non-moving party, and we draw all reasonable inferences from that evidence in" that party's favor. *Bunn v. Federal Deposit Ins. Corp. for Valley Bank Ill.*, 908 F.3d 290, 295 (7th Cir. 2018).

---

asserts otherwise, there is no evidence to a raise an issue of fact that Progress Rail improperly considered write-ups more than 24 months old in deciding to terminate McDaniel.

**A. Discrimination Claim**

McDaniel alleges that Progress Rail discriminated against him in violation of the ADEA by improperly disciplining him and terminating him on the basis of his age. "The ADEA protects workers 40 years of age and older from age-based employment discrimination." *Wrolstad v. Cuna Mut. Ins. Soc'y*, 911 F.3d 450, 454 (7th Cir. 2018). To recover under a theory of disparate treatment in the ADEA context, "it's not enough to show that age was *a* motivating factor. The plaintiff must prove that, but for his age, the adverse action would not have occurred." *Id.* (quoting *Martino v. MCI Commc'ns Serv., Inc.*, 574 F.3d 447, 455 (7th Cir. 2009)) (emphasis in original).

"[T]he singular question that matters in a discrimination case is: '[W]hether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action.'" *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018) (quoting *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)). To present this evidence, a plaintiff may utilize the *McDonnell Douglas* "burden-shifting framework." *David v. Board of Trustees of Cmty. College Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). "Under this approach, the plaintiff must show evidence that '(1) she is a member of a protected class, (2) she was meeting the defendant's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees who were not members of her protected class were treated more favorably.'" *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 719 (7th Cir. 2018) (quoting *Carson v. Lake County, Ind.*, 865 F.3d 526, 533 (7th Cir. 2017)). "If the plaintiff

meets each element of her prima facie case, 'the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual.'" *Id.* at 719–20 (quoting *Carson*, 865 F.3d at 533).

Notably, the *McDonnell Douglas* framework is not the only method plaintiffs may use to prove their claim. "[It] is merely one way of culling the relevant evidence needed to demonstrate whether a reasonable factfinder could conclude that an employer engaged in an adverse employment action based on the plaintiff's" age or another proscribed factor. *Johnson*, 892 F.3d at 894. "However the plaintiff chooses to proceed, at the summary judgment stage the court must consider all evidence to decide whether a reasonable jury could find that the plaintiff suffered an adverse employment action *because of* her age." *Skiba*, 884 F.3d at 720 (quoting *Carson*, 865 F.3d at 533) (emphasis in the original). We therefore also assess the evidence "as a whole, rather than asking whether any particular piece of evidence proves the case by itself." *Ortiz*, 834 F.3d at 765.

Turning to the *McDonnell Douglas* framework, McDaniel satisfies the first element because he is over 40 years old and is therefore a member of the ADEA protected class. The parties dispute the second and third elements. First, they dispute whether McDaniel was meeting Progress Rail's legitimate expectations, and second, they dispute which actions that Progress Rail took against him constitute adverse action. But we need not resolve these issues because McDaniel failed to satisfy the fourth element. Since McDaniel did not put forth sufficient information about similarly situated employees

outside of his class that were treated more favorably, his discrimination claim fails under the *McDonnell Douglas* framework.

"All things being equal, if an employer takes an action against one employee in a protected class but not another outside that class, one can infer discrimination. The 'similarly situated' prong establishes whether all things are in fact equal." *Filar v. Bd. of Educ. of City of Chicago*, 526 F.3d 1054, 1061 (7th Cir. 2008) (citing *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007)). "Its purpose is to eliminate other possible explanatory variables, 'such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable'—discriminatory animus." *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012) (quoting *Humphries*, 474 F.3d at 405).

Although similarly situated employees "need not be identical in every conceivable way," they "must be 'directly comparable' to the plaintiff 'in all material respects.'" *Id.* (quoting *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 365–66 (7th Cir. 2009)). "In the usual case a plaintiff must at least show that the comparators (1) 'dealt with the same supervisor,' (2) 'were subject to the same standards,' and (3) 'engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'" *Id.* at 847 (quoting *Gates v. Caterpillar, Inc.,* 513 F.3d 680, 690 (7th Cir. 2008)). But "this is not a hard and fast test, and there is no magic to these considerations. In the employment discrimination context, the requirement to find a similarly situated comparator is really just the same requirement that any case demands—the requirement to submit relevant evidence." *Johnson*, 892 F.3d at 895.

"Whether a comparator is similarly situated is typically a question for the fact finder, unless, of course, the plaintiff has no evidence from which a reasonable fact finder could conclude that the plaintiff met his burden on this issue." *Id.*

This Court's recent holding in *Skiba* is instructive here. In *Skiba*, we held that a table listing the names, ages, and positions of 37 employees did not amount to enough "amplifying detail of the employees' qualifications or employment history that would allow this Court to comfortably conclude their hiring was the result of discriminatory motive rather than some other explanatory variable." *Skiba*, 884 F.3d at 723. As a result, the plaintiff's comparator argument failed. *Id.* at 724; *see also Johnson*, 892 F.3d at 898 (finding plaintiffs provided insufficient evidence of similarly situated employees to survive summary judgment because they offered "no evidence about who [the comparator] was, what her position was, who supervised her, why she refused to work in her assigned area, and whether she had a similar disciplinary record and similar performance reviews").

McDaniel provides even less detail than the plaintiff in *Skiba.* He argues that the eight other Material Handlers under Howard's supervision qualify as similarly situated employees. McDaniel, however, does not provide any information that would allow a finder of fact to determine that these individuals are indeed similarly situated: he did not submit the employees' names, work history, performance reviews, or—most importantly—their ages. In fact, he provided no information at all about the eight individual employees who he alleges are similarly situated. McDaniel speculates that these other employees were younger than he was, but supplies no information for the court to verify his age relative to theirs.

The district court correctly found that McDaniel's conclusory assertion that there is "evidence that he was treated less favorably than similarly situated employees who did not contest Howard's failure to comply with Progress Rail's policies" was insufficient to raise an issue of fact and survive summary judgment. As McDaniel has not identified any similarly situated employees to allow a factfinder to conduct a "meaningful comparison," his prima facie case for discrimination fails. *See Barricks v. Eli Lilly and Co.*, 481 F.3d 556, 560 (7th Cir. 2007).

Using the *Ortiz* holistic approach, McDaniel's claim fares no better. Under *Ortiz*, the Court must determine "whether the evidence would permit a reasonable factfinder to conclude" that the plaintiff's age "caused the discharge or other adverse employment action." *Ortiz*, 834 F.3d at 765. McDaniel's complaint about Howard's compliance with the overtime policy and McDaniel's discipline for cell phone usage occurred in the same month, and proximity is suggestive. But "timing alone is insufficient to establish a genuine issue of material fact" to support a discrimination claim. *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 939 (7th Cir. 2007). The record contains no evidence that Progress Rail's decisions to suspend and terminate McDaniel were due to his age. Rather, the record demonstrates that Progress Rail suspended McDaniel because he violated the cell phone policy, and that Progress Rail terminated him because he violated the lifting policy. Indeed, McDaniel admitted to having his cell phone on top of the truck, and admitted that he "lifted" the shaft. He has provided no evidence to raise an issue of fact that he experienced discipline as a result of his age.[2]

---

[2] McDaniel further argues that the evidence he presents "weaves a compelling mosaic giving rise to an inference of age discrimination." In

Finally, McDaniel invokes a cat's paw theory of liability, meaning that the ultimate decisionmaker issued an adverse employment action based on the discriminatory animus of another. *Schandelmeier-Bartels v. Chicago Park Dist.*, 634 F.3d 372, 379 (7th Cir. 2011) ("In employment discrimination cases, the 'cat's paw' is the unwitting manager or supervisor who is persuaded to act based on another's illegal bias."). McDaniel argues that Howard impermissibly influenced the Safety Committee's decision to terminate him. A cat's paw theory requires McDaniel to show that Howard "actually harbored discriminatory animus against him." *Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 570 (7th Cir. 2017) (quoting *Nichols v. Michigan City Plant Planning Dept.*, 755 F.3d 594, 604 (7th Cir. 2014)). McDaniel must also show that Howard's "input was a proximate cause" of the adverse actions against him. *Id.* (quoting *Nichols*, 755 F.3d at 604). To avoid liability under a cat's paw theory, a decisionmaker "is not required to be a paragon of independence. It is enough that the decisionmaker is not wholly dependent on a single source of information and conducts her own investigation into the facts relevant to the decision." *Martino*, 574 F.3d at 453 (internal citations omitted).

McDaniel failed to produce evidence of Howard's age-based animus. But even if he had, there is simply no evidence that such bias proximately caused McDaniel's suspension or termination. Howard is not a member of the Safety Committee. Although the Safety Committee did rely, in part, on materials Howard compiled and submitted, McDaniel does not

---

*Ortiz*, we reiterated "that 'convincing mosaic' is not a legal test," and therefore not the appropriate standard to evaluate evidence of employment discrimination. *Ortiz*, 834 F.3d at 764. In any event, McDaniel does not raise an issue of fact to defeat summary judgment.

allege that anything in these materials was false. The Safety Committee also reviewed and relied on materials not submitted by Howard, including McDaniel's medical report and his own statements. As McDaniel has not raised an issue of fact, even viewing the evidence in the light most favorable to him, his cat's paw theory fails.

**B. Retaliation Claim**

As in employment discrimination cases, in retaliation cases, we ask "whether the evidence would permit a reasonable factfinder to conclude" that the plaintiff's age "caused the discharge or other adverse employment action." *Ortiz*, 834 F.3d at 765. Within this inquiry, a party may utilize the burden-shifting framework of *McDonnell Douglas. Lewis v. Wilkie*, 909 F.3d 858, 866–67 (7th Cir. 2018). McDaniel invokes this framework to bring a prima facie retaliation claim.

Under the *McDonnell Douglas* framework in the retaliation context, "a plaintiff must show that (1) he engaged in protected activity; (2) he suffered a materially adverse employment action; (3) he was meeting his employer's legitimate expectations; and (4) he was treated less favorably than similarly-situated employees who did not engage in protected activity." *Boss v. Castro*, 816 F.3d 910, 918 (7th Cir. 2016). McDaniel also needed to demonstrate that retaliation was the "but-for" cause of the adverse action, "not merely a contributing factor." *Barton v. Zimmer, Inc.*, 662 F.3d 448, 455 (7th Cir. 2011). McDaniel argues that Howard retaliated against him—reassigning him to sweeping duties, launching disciplinary action against him for purported cell phone usage, and ultimately initiating his termination—because of McDaniel's complaint to Pekarik about Howard's allegedly discriminatory overtime assignments.

We need not decide whether McDaniel satisfied the first three prongs of the *McDonnell Douglas* framework. Like his discrimination claim, his failure to present evidence of similarly situated employees dooms his retaliation claim. McDaniel did not present evidence of a comparator who similarly violated Progress Rail's cell phone policy or lifting policy—or any safety rule, for that matter—and also complained about overtime, but received better treatment. Because he did not do so, he cannot establish a prima facie claim for retaliation.

Under the *Ortiz* approach, McDaniel has no greater success. "For a reasonable factfinder to find in [McDaniel's] favor, the evidence would have to establish either a causal connection between [McDaniel's] protected activity and the adverse action he suffered or else support an inference of retaliatory motive." *Lewis*, 909 F.3d at 871. It is undisputed that McDaniel violated company policy by leaving his cell phone on top of machinery. And although McDaniel now contends that he attempted to "shift" rather than "lift" the idler, it is undisputed that McDaniel wrote in his post-accident report that he tried to lift a load of more than 35 pounds, also in violation of company policy. Because McDaniel has not produced any evidence to raise an issue of fact as to the causal connection, he cannot survive summary judgment on his retaliation claim.

### III. Conclusion

We therefore **AFFIRM** the judgment of the district court.