In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 24-2645

GRICELDA ONTIVEROS,

*Plaintiff-Appellant,*

*v.*

EXXON MOBIL CORPORATION,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:21-cv-2335 — **LaShonda A. Hunt**, *Judge.*

———————————

ARGUED MAY 14, 2025 — DECIDED AUGUST 5, 2025

———————————

Before SYKES, *Chief Judge*, and JACKSON-AKIWUMI and
PRYOR, *Circuit Judges*.

JACKSON-AKIWUMI, *Circuit Judge*. Gricelda Ontiveros was a
customer service analyst with Exxon Mobil Corporation who
complained to human resources about her work conditions.
She disclosed that her managers behaved inappropriately to-
wards her, created an environment of "machismo," and set
her up to fail by assigning her more work while also denying
her requests for overtime. Exxon investigated the complaints

and found that, although morale was extremely low in the department where Ontiveros worked, there was no indication of discrimination or harassment.

Over the next year, documented issues with Ontiveros's work performance increased. Her managers ultimately gave her the lowest rating on her annual review, before presenting her with the option of agreeing to a performance improvement plan or resigning. Believing this change in her fate was retaliation for her earlier complaints, Ontiveros reacted angrily. Exxon described the reaction as unprofessional and inappropriate. It informed her that the performance improvement plan was no longer an option—her employment was over.

Ontiveros responded to her termination with this lawsuit against Exxon alleging gender discrimination, age discrimination, and retaliation. The district court awarded summary judgment to Exxon. We have taken an independent look, as we must, and we agree the record does not bear out Ontiveros's allegations. We therefore affirm.

**I**

We construe the facts in the light most favorable to Ontiveros as the party opposing summary judgment. *Dunlevy v. Langfelder*, 52 F.4th 349, 353 (7th Cir. 2022).

Ontiveros joined Exxon Mobil's Cicero, Illinois, facility as a contractor in 2010. Five years later, she became a full-time employee. Her duties included handling sales orders, managing inventory, and triaging customer complaints. From 2017 until her termination in 2019, she reported to Pablo Villatoro, who was supervised by plant manager Raul Sanchez.

By all accounts, Ontiveros's supervisor, Villatoro, had a demanding management style. He instituted a new pre-approval policy for overtime hours and pushed his department to complete more work within the workday. A year into working under his supervision, on September 26, 2018, Ontiveros called Exxon's human resources hotline to complain that Villatoro refused to approve her overtime pay despite increasing her workload to unmanageable levels that required overtime to complete. When interviewed as part of the investigation, Ontiveros explained that Villatoro was setting her up for failure, and that she felt bullied in an environment of "machismo," where everyone was afraid to lose their job. Exxon eventually paid Ontiveros the overtime wages she was owed.

Given Ontiveros's allegations, Christopher Holstead, a member of human resources, opened a second investigation with a colleague and scheduled an interview with Ontiveros. She reported to him that Villatoro and Sanchez behaved inappropriately, used derogatory language, and created a hostile work environment. Ontiveros later testified that she specifically told Holstead that Villatoro would stare at other women, that he winked at her and at least one other woman, and that Sanchez once told her he was going to sit on her lap. Holstead asked her if she felt any of this behavior was motivated by gender. His notes recorded this response: "[Ontiveros] did not feel that the behavior was motivated by gender alone, however she did state that she felt Raul [Sanchez] and Pablo [Villatoro] judge her because she doesn't try to dress up for work." Ontiveros added that she was one of only two female employees at the plant.

As part of the investigation, Holstead also interviewed Sanchez and Villatoro. Holstead's final investigation report

determined that Sanchez and Villatoro did not violate any Exxon policy. Holstead noted that Villatoro's department had "extremely low morale." Multiple employees shared that it was difficult to complete their assigned work in eight-hour workdays. Some employees believed this was management's doing. And witnesses offered troubling details. Gerald Romero, for example, was a contractor who recalled that Sanchez had called his work "garbage." But, Holstead concluded, "[n]one of [the witnesses interviewed] were experiencing or facing or brought forward any issues around age discrimination, gender discrimination, or sexual harassment." The report marked the end of the investigation. For her part, Ontiveros testified in a deposition that the sexual harassment stopped after she submitted her complaint.

During her time at Exxon, Ontiveros received several warnings about her work performance from Villatoro. Before she complained about harassment to human resources, Villatoro twice advised her about proper service request reporting procedures. After she complained in the fall of 2018, the warnings about her work performance increased. In January 2019, for example, Villatoro counseled her about missed deadlines and issued her a formal warning about her failure to follow pre-approval procedures for overtime work. Sanchez testified that during this time he was receiving complaints from supervisors and other employees that Ontiveros was being unprofessional and was failing to deliver requested business information in a timely fashion. But there is no written documentation of these complaints.

In the summer of 2019, Villatoro reprimanded Ontiveros for not updating a spreadsheet and for completing a task outside her regular duties that another employee asked her to

complete. Most seriously, a few months later, it came to light that Ontiveros had failed to open a service request for ten months. Ontiveros admitted she "completely dropped the ball," and Villatoro warned her again about the importance of opening service requests within two business days.

Permanent employees at Exxon underwent annual performance assessments. Managers assessed their own employees and then jointly ranked employees across the company in similar roles against each other. At the end of the annual review process, employees like Ontiveros were assigned a letter grade (A, B, C, or D), which represented their final assessment category. Employees who received a D were placed into the "Management of Lower Relative Performance" (MLRP) program and given the option to go on a performance improvement plan (PIP) or accept "Pay in Lieu" (a severance package).

Other members of Ontiveros's department were contractors and thus not subject to the annual performance review process. This includes two individuals we will return to later—Nicole Salvaggio, a woman younger than Ontiveros, and Sal Saucedo, a man younger than Ontiveros. Because no other employee in Ontiveros's department held a similar position, Exxon compared her performance against similar employees at other plants.

Ontiveros received four annual performance reviews as an employee with the following letter grades: a B in both 2016 and 2017 when assessed by a prior manager, a C in 2018 from Villatoro, and a D in 2019 from Villatoro. Ontiveros received similar feedback on each review, namely, that she could improve her communication, time management, and service request investigation quality. Sanchez, who joined the plant in 2017, signed off on the last three performance reviews. One

man in Ontiveros's assessment group from another plant, Stephen Kimber, also received a D in 2019.

On August 28, 2019, Sanchez and Shannon McGuire, a member of human resources, met with Ontiveros to inform her of her D rating and consequent assignment to the MLRP process. At that point, Ontiveros had twenty-one days to decide whether to take a PIP or resign with severance. According to Ontiveros, once she heard her options, she excused herself from the meeting. She then informed Sanchez, who had followed her out of the meeting, that she was going back to her desk to finish the workday. Sanchez insisted that she leave. Ontiveros initially refused but eventually agreed to leave once Sanchez threatened to call the authorities.

Sanchez emailed HR the next day with his version of the events. He reported that Ontiveros got very aggressive, raised her voice at him, and repeatedly called him "[s]weetheart" despite him telling her that was inappropriate. He informed HR that he did not believe it was safe for him and his employees to allow her to return. At his deposition, Sanchez also testified that he believed Ontiveros was going to hit him. McGuire testified that she heard Ontiveros yelling at Sanchez.

Citing Ontiveros's behavior, Exxon withdrew the PIP option. In the days that followed, McGuire attempted to call Ontiveros to explain that the PIP was no longer an option. McGuire's calls were unsuccessful—Ontiveros picked up one call but promptly hung up after McGuire attempted to conference in Sanchez. So, on September 9, 2019, McGuire sent a letter to Ontiveros explaining that her employment was ending, either by resignation (with severance) or termination (without severance), and that she needed to inform Exxon of her decision by September 18, 2019. The letter explained that

the PIP option was removed "as a result of the disrespectful and unprofessional behaviors."

Ontiveros never informed Exxon of her decision and Exxon terminated her effective September 19, 2019. She was forty-two at the time. Ontiveros sued Exxon claiming gender discrimination and retaliation under Title VII, and age discrimination and retaliation under the Age Discrimination in Employment Act (ADEA). The district court granted summary judgment to Exxon. Ontiveros now appeals.

## II

We review a district court's summary judgment decision de novo and construe the record in the light most favorable to the nonmoving party. *Adebiyi v. S. Suburban Coll.*, 98 F.4th 886, 891 (7th Cir. 2024).

Ontiveros advances her claims under *Ortiz v. Werner Enterprises, Inc.*, so we ask, "whether the evidence would permit a reasonable factfinder to conclude" that her protected characteristics "caused the discharge." 834 F.3d 760, 765 (7th Cir. 2016). Under *Ortiz*, "all evidence belongs in a single pile and must be evaluated as a whole" for an "overall likelihood of discrimination." *Id.* at 763, 766. We address each claim in turn.

### A. Gender Discrimination Claim

Title VII forbids an employer from discharging an individual on account of the individual's gender. 42 U.S.C. § 2000e–2. Ontiveros argues Exxon terminated her because she is a woman. She supports her argument with several comparators, the treatment of male employees generally, evidence of pretext, and inappropriate comments from decisionmakers.

Ontiveros presents several colleagues as comparators, but none are sufficiently similar to her to make a meaningful comparison. A comparator is a "similarly situated employee[] outside of the protected class, [who was] treated more favorably." *See Naficy v. Ill. Dep't of Hum. Servs.*, 697 F.3d 504, 511 (7th Cir. 2012). While "congruence need not be perfect," the comparator employee must be "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *See Lesiv v. Ill. Cent. R.R. Co.*, 39 F.4th 903, 919 (7th Cir. 2022) (quoting *Donley v. Stryker Sales Corp.*, 906 F.3d 635, 639 (7th Cir. 2018)).

Only three of the proposed comparators are from outside Ontiveros's protected class: Saucedo, Kimber, and Romero. And none of these men are suitable comparators under our caselaw. Saucedo was not "similarly situated" because he held a different position and was a contractor, not an employee subject to the performance review process. *See Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir. 2008) (comparators are similarly situated if they "dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances" (quoting *Snipes v. Ill. Dept. of Corr.*, 291 F.3d 460, 463 (7th Cir. 2002))). Kimber held a job similar to Ontiveros, and Exxon evaluated him against her, but Exxon did not treat him "more favorably." *Naficy*, 697 F.3d at 511. Exxon rated Kimber's performance with a D and gave him the same options as Ontiveros: accept a PIP or severance. Lastly, Ontiveros points to the fact that Sanchez called a male employee's work garbage (Ontiveros does not tell us the employee's name but the record reflects it was Romero). She would like us to infer that Sanchez's comment was a low assessment of

Romero's work. But even if we agree, Ontiveros does not tell us if: (a) Exxon gave Romero a warning or negative employment review, which would mean he was treated similarly, or (b) Exxon took no employment action, which would mean he was not treated similarly. Without this information, we cannot determine whether Romero was treated more favorably than Ontiveros. There is, then, no adequate comparator evidence to add to our assessment that Ontiveros's gender caused her termination.

Next, Ontiveros argues that gender discrimination explains why Exxon placed no men into MLRP at the Cicero plant. But Ontiveros's citations do not support her proposition that Exxon placed no men into MLRP. The record evidence shows only that no man accepted a PIP which, recall, is one of two options given to employees placed into MLRP. The record is silent as to how many male employees underwent MLRP and chose to resign instead of accepting a PIP. Finally, we also do not know if any of the male employees at the Cicero plant were supervised by Villatoro or Sanchez, had job duties similar to Ontiveros, or had similar performance issues. We cannot infer discrimination when so many facts are missing from the record.

Ontiveros next argues that the district court improperly credited Exxon's stated reason for terminating her. We disagree. The district court evaluated Exxon's description of the MLRP meeting in the context of determining whether Exxon's justification for the termination was pretextual. In this analysis, what matters is whether Exxon fabricated reasons to fire Ontiveros. *Argyropoulos v. City of Alton*, 539 F.3d 724, 736 (7th Cir. 2008) (noting pretext must be akin to a lie or a phony reason). Ontiveros does not dispute that she left the meeting

early and refused to leave the building when told to do so. Ontiveros presented no evidence that Exxon's stated reason for terminating her—that she behaved inappropriately—was a lie. As such, this argument also does not help Ontiveros build a pile of evidence.

Ontiveros testified that Villatoro's winking and Sanchez's inappropriate comment about sitting on Ontiveros's lap occurred before she complained to human resources in 2018. However, Ontiveros does not connect the inappropriate comment or behavior, which occurred a year before her termination, to the decision to fire her. To be sure, Ontiveros has shown evidence of a work culture that put increasingly impossible workloads on staff, denied them overtime, and allowed sexualized and inappropriate comments. But the evidence Ontiveros presents is insufficient for a jury to reach a different conclusion altogether: that her gender caused her termination.

## B. Age Discrimination Claim

"The ADEA protects workers 40 years of age and older from age-based employment discrimination." *Tyburski v. City of Chicago*, 964 F.3d 590, 598 (7th Cir. 2020) (quoting *Wrolstad v. Cuna Mut. Ins. Soc'y*, 911 F.3d 450, 454 (7th Cir. 2018)). To prove a claim, it is not enough for a plaintiff "to show that age was *a* motivating factor." *Id.* (quoting *Wrolstad*, 911 F.3d at 454). Rather, a plaintiff must present evidence that "but for [her] age, the adverse action would not have occurred." *Id.* (quoting *Wrolstad*, 911 F.3d at 454).

Ontiveros was forty-two when she was terminated. Taking the broadest view of her claims, she cannot connect any of the events that led to her termination to her age. Her strongest

argument, and the only one she supports with facts and law, is that two younger workers were treated more favorably: Salvaggio and Saucedo. But as discussed above, contractors—which Salvaggio and Saucedo both were—are not adequate comparators because they were not subject to performance reviews or the MLRP process. Without comparators or any other evidence, no reasonable jury could find Ontiveros's age was the "but for" cause of her termination.

### C. Retaliation Claim

An employer may not retaliate against an employee for protesting employment discrimination. Both Title VII and the ADEA protect against this. 42 U.S.C. § 2000e–3(a); *see also Murphy v. Caterpillar Inc.*, 140 F.4th 900, 911, 917 (7th Cir. 2025). To survive summary judgment on a retaliation claim, a plaintiff must offer evidence of: "(1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 718 (7th Cir. 2018) (quoting *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017)).

Even assuming Ontiveros engaged in protected activity when she complained to human resources about Villatoro and Sanchez's behavior, and even assuming that her worsening performance reviews constitute an adverse action, Ontiveros has not sufficiently linked her complaint to her worsening performance reviews and termination. Ontiveros can do so with circumstantial evidence, including "suspicious timing, ambiguous statements of animus, evidence other employees were treated differently, or evidence the employer's proffered reason for the adverse action was pretextual." *Adebiyi*, 98 F.4th at 892 (quoting *Rozumalski v. W.F. Baird & Assocs., Ltd.*, 937 F.3d 919, 924 (7th Cir. 2019)). Ontiveros puts

forward three pieces of circumstantial evidence, but they are unavailing.

Ontiveros first argues that suspicious timing supports an inference of retaliation. As she sees it, documented concerns with her performance increased after she complained about overtime pay and harassment in the fall of 2018. Indeed, the fact that her complaint in November 2018 preceded her termination nearly a year later in September 2019 is some evidence of potential retaliation. *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 905 (7th Cir. 2005). But this evidence is undercut, at least partially, by her 2016 and 2017 performance reviews that predated her complaints and resulted in a B rating based on several areas of concern: time management, communication, and service request investigation effectiveness. And the written warning she received in January 2019 appears to be an escalation of an ongoing issue. That warning cited notices sent to Ontiveros about required pre-approval going back to September 2017 plus issues with her compliance dating back to April 2018. So, although it is true that criticisms of her performance increased after her complaints, that fact is insufficient to build a causal chain as the performance issues began before she complained and continued for months.

Ontiveros next argues that because there is no evidence that Villatoro and Sanchez were expressly advised not to retaliate against her, there should be an inference that they did. But we know of no authority, and Ontiveros points us to none, that supports an inference of retaliation from such silence in the record.

Finally, Ontiveros argues that the withdrawal of the PIP option following the August 28, 2019, meeting suggests Villatoro and Sanchez retaliated against her. The parties agree that

Ontiveros left the meeting before it finished and refused to leave the building when asked. The undisputed facts cannot support an inference of retaliation because Exxon believed Ontiveros acted unprofessionally and Ontiveros has not supplied anything to support an inference that Exxon's stated reason for removing the PIP was a lie.

In sum, on this record, we cannot conclude that Exxon retaliated against Ontiveros.

### III

Ontiveros worked under difficult conditions in a toxic workplace. As she tells it, her gender, age, and complaints of discrimination caused her supervisors to nitpick at her work and eventually push her out. We are not called upon to evaluate the truth of what happened. All we hold today is that the present record does not bear out Ontiveros's contentions and, without record support, a reasonable factfinder cannot find for her on any of her claims.

AFFIRMED.